IN RE: UNITED CARBON COMPANY ASSESSMENT

(No. 8475)

Submitted February 23, 1937. Decided March 16, 1937.

*Osman E. Swartz,* for plaintiff in error.
*Dale G. Casto,* for Kanawha County.

KENNA, PRESIDENT:

The United Carbon Company, a Delaware corporation, protested the assessment of property taxes for the year 1935 upon an $853,743.00 valuation of intangibles, consisting of cash in bank in other states, and receivables of business not transacted in West Virginia. In accordance with the statute, the assessor of Kanawha County certified the protest and the grounds therefor to the State Tax Commissioner who ruled against the taxpayer, after which the taxpayer, by petition, also pursuant to statute, carried its protest to the Circuit Court of Kanawha County where it was heard upon a case agreed, and to a judgment of that court adverse to its contentions, the taxpayer prosecutes this writ of error.

The points upon which reversal is sought are: (1) that the property in question has no tax situs in West Virginia, and therefore that the assessment thereof in Kanawha County is a nullity; and (2) that the same question, arising upon the same facts, was before the Circuit Court of Kanawha County in respect to the assessment of like property for the year 1933, and in that proceeding (exhibited with the taxpayer's petition herein and by stipulation made a part of this record) was adjudicated in favor of the taxpayer and against the right to lay the assessment in this State, and that the former proceeding is *res adjudicata* of the matters now before the court.

Taking up first the question of *res adjudicata,* which seems to us in logical order to be essential before we can say that we reach the case upon the merits, we wish to comment upon a distinction, likely not determinative of any question now before us, but nevertheless important to prevent confusion of legal principles. In strictness, the plea of *res adjudicata* is available only when the cause of action in the proceeding where the plea is interposed is the same as that before the court in the proceeding the judgment in which is depended upon as a bar. When this is so, and when the parties are the same, the former judgment is conclusive and is an absolute bar to the re-opening of not only the questions which were

actually litigated and decided in the former proceeding, but of all questions between the parties which could have been litigated and decided in the former case. But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata*. See *Cromwell* v. *County of Sac.*, 94 U. S. 341, 24 L. Ed. 195; 15 R. C. L. 962, section 438, cited with approval in *Rigg, Admr.,* v. *Canterbury*, 116 W. Va. 303, 180 S. E. 182. Since the claim for taxes of one year is not the same claim as that for taxes of another year, the two causes of action (to use the accepted phrase in the law of *res adjudicata*) are not the same and the former judgment is not, in strictness, proper matter for a plea of *res adjudicata*. The question presented by the plea is whether an estoppel arises by virtue of the former judgment, preventing the trying over again of matters which were actually tried in the former proceeding. See the discussion in *Tait, Collector,* v. *Western Maryland Railway Co.,* 289 U. S. 620, 623, 53 S. Ct. 706, 707, 77 L. Ed. 1405, where also *Cromwell* v. *County of Sac.,* 94 U. S. 341, 24 L. Ed. 195, is cited with approval.

But in the case at bar, were the same matters litigated in the former proceeding? It is contended by the plaintiff in error that the facts upon which was based the finding of the circuit court in the former proceeding are the same facts that are before the court now. In substantiation of this contention it is asserted that the former proceeding was submitted upon an agreed case in form exactly like that now before us. There is, we think, a difference between facts having the same legal import, on the one hand, and the same facts, on the other hand. While the facts covered by the agreed case submitted for the tax year 1933 may be conceded, arguendo, to be the *exact equivalent* to the facts covered by the agreed case for the assessment of taxes in the year 1935, we do

not think that they can be regarded as the *same* facts. All of the facts stipulated covering the taxpayer's situation in 1933 were subject to alteration. It becomes material to this inquiry to know what intangible property was assessed for taxation in the year 1935. It is not stipulated that the intangible property itself is the same property in the case that was before the court in 1933, and the material differences in the valuation of that property indicate that it is not the same. Since the origin of the items that comprise the total of these intangibles has a direct bearing upon the situs of the property for tax purposes, it can be seen that this difference in the property assessed for taxes makes a material difference in the factual situation for the two years. The *nature* of the intangibles owned in 1935 may be the same as in 1933 and that nature may give rise to the same legal conclusion, but that does not mean to say that it is the same property so that an estoppel in the proceeding for 1935 could be predicated upon the finding for 1933. Other differences in the stipulations might be commented upon to the same effect, and it would be interesting to attempt a much fuller statement of the difference that we are striving to draw between exactly equivalent facts and facts that are indubitably the same. To pursue the discussion further, however, would involve us in the protracted refinements of the logician and, we think, would serve no useful practical purpose.

The authorities cited by counsel for plaintiff in error, such as *New Orleans* v. *Citizens Bank,* 167 U. S. 371, 17 S. Ct. 905, 42 L. Ed. 202; *Baldwin* v. *Maryland,* 179 U. S. 220, 21 S. Ct. 105, 45 L. Ed. 160; *Deposit Bank* v. *Frankfort,* 191 U. S. 499, 24 S. Ct. 154, 48 L. Ed. 276, and *Tait, Collector,* v. *Western Maryland Railway Co.,* 289 U. S. 620, 53 S. Ct. 706, 77 L. Ed. 1405, have been carefully examined, and although what has been said may impinge some of the general statements contained in the opinions of the United States Supreme Court, we do not think that it runs counter to the decision of any essential questions that have been before that court. Of course, what we have said is to be considered always as subject to the rule of *stare decisis.*

The West Virginia case of *West Virginia National Bank* v. *Spencer*, 71 W. Va. 678, 77 S. E. 269, is relied upon by the plaintiff in error as establishing the rule that an adjudication of a question in an assessment proceeding for one year is a bar to the raising of the same question in an assessment proceeding for a subsequent year. That case involved bills in equity consolidated and heard together, the one seeking to enjoin the collection of taxes for the year 1908 and the other for the year 1909, because the plaintiff had been denied the right to deduct certain indebtedness for those years. Both bills disclosed that the plaintiff had asserted the same right to deductions for the year 1908 in a statutory proceeding to correct the assessment for that year which it had carried to the Circuit Court of Cabell County where the question had been decided against its contended right to make the deduction. There had been no review of that judgment. This court held that the question could not be re-opened with respect to either the years 1908 or 1909 because of the former judgment for the year 1908. Subject to the jurisdictional question that we will refer to briefly in a moment, this decision was clearly right as it affected the year 1908. The same demand had been before the court in the former proceeding and the decision there was clearly *res adjudicata* of the same question in the later case. We do not think, however, that it necessarily follows that the case is sound as to the same holding for the year 1909. But we do not see how the case can be regarded as authority on either the question of *res adjudicata* or that of estoppel, for the reason that the case turned on a jurisdictional question, and the court held that a bill in equity will not lie to review matters of assessment that may be reached by the statutory remedy provided for the same purpose, the statutory remedy being considered exclusive. When a court decides that it lacks jurisdiction of the proceeding, it cannot decide any of the substantive questions involved in that proceeding, as was attempted in *West Virginia National Bank* v. *Spencer*, 71 W. Va. 678, 77 S. E. 269. So, we conclude that the proceeding involving the taxes for the year 1933

does not bar this proceeding in whole or in part.

The next question raised by the plaintiff in error is that there is no statutory authority in this state for the taxation of the sort of intangibles before us in this case. This question was squarely raised in *In Re Wheeling Steel Corporation Assessment*, 115 W. Va. 553, 177 S. E. 535, 104 A. L. R. 802, and was there definitely decided against the contention of the plaintiff in error. It is no longer an open question.

The stipulation filed in the case is to the following effect (United Carbon Company is sometimes spoken of as "petitioner", as it was in the court below) :

United Carbon Company is a Delaware- corporation engaged in the production and sale of natural gas and in the manufacture and sale of carbon black. It maintains executive offices in Charleston, West Virginia, at which place its principal books of account are kept and its president and vice-president "function." The stipulation does not define the powers and duties of either the president or the vice-president, nor does it name and define the powers and duties of the other officers of the corporation. Petitioner maintains a chemical laboratory in Charleston, and operates gas wells in Kanawha, Boone, Braxton and Clay counties, West Virginia. It does not manufacture nor sell carbon black in the State of West Virginia.

Outside the State of West Virginia, petitioner maintains what the stipulation terms its "principal office" in Delaware, where the meetings of its stockholders and some of the meetings of the directors are held, and where its stock ledgers are kept. No other business is transacted in the State of Delaware. It maintains sales offices in New York City, where most of the meetings of its directors and executive committee are held, and where its stock registration and transfer books are kept. Sales offices are maintained at Akron, Ohio, where the greater part of its domestic sales of carbon black are negotiated, and at Chicago, Illinois, and San Francisco, California. Natural gas is produced and carbon black manufactured in Louisiana, where offices are maintained for the

superintendence of the business of that state, and where the secretary of the company resides. Carbon black is also manufactured in Texas, Montana and Utah, with offices for the superintendence of that production at Borger, Texas. The foreign sales business of the company is conducted through London and Manchester, England, and elsewhere, and natural gas is produced in the State of Kentucky with offices for the superintendence of that business at Pikeville and Campbellsville, Kentucky.

The carbon black sales of petitioner are about equally divided between domestic and foreign business, and its natural gas is sold largely to pipe line companies operating in interstate business.

Less than two and one-half per cent of its natural gas production is in West Virginia.

Four of the twenty-six banks in which the United Carbon Company carries bank accounts are located in West Virginia, and the accounts in Bank of Manhattan Company, Guaranty Trust Company of New York, Charleston National Bank, Citizens Bank of Weston, Farmers & Citizens State Bank of Clendenin, and Bastrob State Bank, are checked upon exclusively from the Charleston Office, with the exception that the treasurer occasionally draws checks from Weston, West Virginia, where he resides. All dividend checks are drawn in, and mailed from, New York City.

The company, as of January 1, 1935, owned in Kanawha County, West Virginia, its laboratory and building valued at $13,500.00, laboratory equipment, $6,-000.00, office furniture, fixtures and equipment, $1800.-00, automobiles, $1300.00, cash and bank deposits, $39,-315.00, notes, book accounts and accounts receivable, $31,551.00, and oil and gas leaseholds and pipelines, $138,489.00. It is stipulated that the items of $39,315.00 and $31,551.00 represent all the intangible personal property connected with the natural gas business of the company conducted in the State of West Virginia and all sums owed to it by residents of West Virginia.

The assessor of Kanawha County determined the value of the intangible property of the United Carbon

Company for the assessment year 1935 from the records and accounts found in the executive offices in Charleston. The notes payable, book accounts and accounts receivable of the company are usually paid the company by means of checks which ultimately reach the Charleston Office, and checks received at New York and Chicago are mailed direct to Charleston. The Louisiana Office collects for certain items of rents of real estate, sales of natural gas, electric power and miscellaneous items and deposits its collections in that state. The petitioner's foreign sales are handled through Carbon Black Export, Inc., which sells petitioner's products abroad, collects the proceeds and keeps the books of original entry with respect to such sales in New York City. The net proceeds of the foreign business are deposited to petitioner's credit at New York City.

None of the intangibles here in issue are valued for assessment purposes in other jurisdictions.

The working capital required by the company for its business which is purely local to West Virginia, does not exceed $70,866.00, and the cash amounting to $163,-778.00 assessed for 1935 is part of the working capital of petitioner, and includes cash and working capital used by petitioner in its interstate and foreign business. That the cash working capital of petitioner for the year 1935 on the average was deposited forty-eight per cent in New York, seventeen per cent in Charleston, West Virginia, and thirty-five per cent in banks elsewhere.

None of the $164,831.00 in notes, bank accounts and accounts receivable, except the sum of $39,315.00, is due from debtors or customers residing in West Virginia, and, except the sum of $39,315.00, all of the notes, bank accounts and accounts receivable grow from transactions in interstate and foreign commerce in which the origin of the article of commerce, transportation of it and the delivery to the customer are entirely outside the State of West Virginia, and from purely local business transacted in states other than West Virginia.

It is stipulated that the natural gas business conducted by petitioner in West Virginia is entirely separate and

distinct from the natural gas business conducted by petitioner in other states, and is also separate and distinct from the carbon black business of petitioner, and that the natural gas properties in West Virginia are not physically connected with the natural gas properties in other states, or with any of petitioner's carbon black properties, and that the employees of petitioner in its West Virginia gas properties have nothing to do with petitioner's natural gas properties in other states, nor with its carbon black business.

In this state of stipulated fact, the plaintiff in error insists that since the domicile of United Carbon Company is the State of Delaware, under the laws of which alone it exists, the situs of its intangible personal property for the purposes of taxation presumptively follows that domicile, where it remains until the presumption has been overcome by clear proof of a business situs elsewhere. The same contention was advanced in *In Re Wheeling Steel Corporation Assessment,* and upon review of that case in the United States Supreme Court, Chief Justice Hughes, speaking for the court, had the following to say upon that subject:

> "Second.—The Corporation complied with the laws of the State of its creation in designating its 'principal' office in that State. It is manifest that this designation, while presumably sufficient for the purpose, was a technical one and that the office is not a principal office so far as the actual conduct of business is concerned. While a duplicate stock ledger and records of transactions with respect to capital stock are maintained in Delaware, the business operations of the Corporation are conducted outside that State. The office in Delaware is maintained through the service of an agency organized to furnish this convenience to corporations of that description. To attribute to Delaware, merely as the chartering State, the credits arising in the course of the business established in another State, and to deny to the latter the power to tax such credits upon the ground that it violates due process to treat the credits as within its jurisdiction, is to make a legal fiction dominate

realities in a fashion quite as extreme as that which would attribute to the chartering State all the tangible possessions of the Corporation without regard to their actual location.

"The constitutional authority of West Virginia to tax the accounts receivable and bank deposits in question cannot be denied upon the ground that they are taxable solely in Delaware. The question is whether they should be deemed to be localized in West Virginia." *Wheeling Steel Corp.* v. *Fox, State Tax Commissioner et al.,* 298 U. S. 193, 211.

Since the facts stipulated on this particular point, we think, bring this case substantially within the facts of the *Wheeling Steel Case,* respecting it, we are not particularly persuaded by this argument. In fact, it seems to us that the trend of the modern cases, although we confess that it has never been explicitly held, is to the effect that, for tax purposes, a corporation may acquire a domicile in a state other than the state of its incorporation. Where it clearly appears that a corporation has its main plant and principal offices for the transaction of business in a state where its executive officers perform their duties so that the practical corporate being centers its functions there, we see no reason for saying that it is to be presumed that the situs of its personal property is another state under the laws of which it holds its charter, when it does nothing more there than maintain a technical principal office. It seems to us that this is the necessary import of the decision in the *Wheeling Steel Case.*

The main question before us is to determine whether the intangibles here in question have, by virtue of the method by which the taxpayer did its business as shown by the stipulation before us, acquired a business situs in West Virginia. On this question, the trial court thought, and the defendant in error insists, that this case is governed by the case of the *Wheeling Steel Corporation.* We think there are many salient points of difference, among which are the following:

In the *Wheeling Steel Case,* the corporation's general

business offices were shown to be located at Wheeling, where it owned a twelve-story office building, a little less than one-half the space in which was occupied by the corporation for its office work. No parallel facts are covered by the stipulation before us. The managing officers of the Wheeling Steel Corporation resided in the City of Wheeling. There is nothing before us showing the powers and duties of the officers of United Carbon Company who reside in the State of West Virginia, nor those who reside elsewhere. In the *Wheeling Steel Case,* it appeared that the sales contracts and orders from all of that corporation's sales offices were subject to acceptance or rejection at its Wheeling offices. No parallel fact is stipulated in this case. In the *Wheeling Steel Case,* it was stipulated that all of the invoices of the corporation were payable at its Wheeling offices. There is nothing here which places that phase of the matter before us upon the same basis. Many differences in detail between the two cases could be pointed out in further justification of our conclusion that we are not bound in this case by the decision in the *Wheeling Steel Corporation Case.*

The *Wheeling Steel Corporation Case* turned largely upon the conclusion covered by the following language quoted from page 557 of the opinion in that case:

> "The facts agreed herein show that the management of the corporation radiates from Wheeling, and that the major part of its executive business is performed or initiated there. We are of opinion that such a localization of the corporation's business at Wheeling imparts to its entire intangible property a *prima facie* situs for taxation at that place."

We are of the opinion that the stipulation before us in this case does not warrant a like conclusion here.

Having determined that the stipulation before us does not warrant us in finding that the taxpayer's business, so to speak, was "headquartered" at Charleston, we are driven to conclude also that the stipulation before us fails

to show that the particular business out of which grew the intangibles assessed for taxation was such as to give to them, *en masse*, a business situs in West Virginia. This stipulation shows that but a small part of this taxpayer's business is conducted in this state. Less than two and one-half per cent of its natural gas production is in West Virginia. None of its carbon black factories are located in West Virginia. It engages in no business other than the production and sale of natural gas and the manufacture and sale of carbon black. Its foreign business in carbon black, which comprises about fifty per cent of the total, is managed in New York City, and the stipulation fails to disclose that the proceeds thereof ever reach West Virginia or go through the books at Charleston. It may be that of the intangibles under consideration in this case certain items should properly be taxed in West Virginia, but the effort has been made to deal with them as a whole, and there is nothing that warrants us in attempting to particularize.

We fully realize that at this time judicial determination of the question of the situs of intangible property for the purpose of taxation cannot be said to have reached the point where any settled and controlling rule can be laid down. Between those cases where the matter of situs renders such property clearly taxable and those cases where the lack of situs renders such property clearly not taxable, there is a "twilight zone" into which, naturally, most of the controverted cases fall. The case before us belongs in the latter category, and it may well be that a slight difference in the showing upon which our conclusion is based would impel us to the opposite determination.

On the basis of what has been said, we are of the opinion that neither the doctrine of *res adjudicata* nor that of estoppel, on the basis of the stipulation before us in this case, serves to bar this proceeding by reason of the adjudication in the former proceeding to review the assessment of the property of plaintiff in error for the year 1933. We are further of the opinion that the taxing authorities have failed to make a showing that the in-

tangible property, assessment of which is under review, had, for the tax year 1935, a situs in West Virginia that would justify the levying of an *ad valorem* property tax thereon in this state. The judgment of the Circuit Court of Kanawha County will therefore be reversed, and the case remanded for such further proceedings not at variance herewith, as may seem proper.

*Reversed and remanded.*