ABBIE GRACE

*v.*

CHARLES C. KLEIN, *Administrator C. T. A. OF THE ESTATE OF ANNA E. BOGGS, Deceased, et al.*

(No. 12511)

Submitted January 25, 1966.　　　Decided March 22, 1966.

*Ducker & McCreight, Edwards & Klein,* for appellants.

*Dodrill & Dodrill,* for appellee.

CAPLAN, PRESIDENT:

In this action instituted in the Circuit Court of Cabell County the plaintiff, Abbie Grace, seeks an award of certain funds which are on deposit in the Guaranty National Bank of Huntington, situate in Huntington, West Virginia. These funds are in a savings account and a checking account on deposit in said bank in the name of the plaintiff's sister, Anna E. Boggs, now deceased. Upon the refusal of Charles C. Klein, Administrator, C.T.A. of the estate of Anna E. Boggs, to deliver these funds to the plaintiff she instituted this action. The case was submitted to the trial court for decision upon the pleadings and exhibits filed therein and upon oral arguments of counsel. The court having entered judgment for the plaintiff, the defendant prosecutes this appeal.

Anna E. Boggs, during her lifetime, had on deposit in the Guaranty National Bank of Huntington certain sums of money, namely, $4,234.00 in a checking account and $11,-048.46 in a savings account. It is these sums of money

which are the subject of the controversy. By her will dated March 13, 1961, Anna E. Boggs, after directing that her just debts be paid, bequeathed all of the residue of her estate, of every kind and character, whatsoever and wheresoever situate, to her son Raymond Robert Ward and to each of his children, Phyllis, Grace, Walter, Bobby and Bryan, share and share alike.

On April 29, 1962, Mrs. Boggs, during a serious illness, from which she died on July 4, 1962, signed and apparently delivered to the plaintiff the following letter, which is attached to the complaint as an exhibit:

> "Chesapeake, Ohio
> R.F.D. No. 1
> April 29, 1962
>
> The Guaranty National Bank
> Huntington, W. Va.
>
> Gentlemen:
>
> I Anna E. Boggs sister of Abbie Grace request that if I should die *befor* my sister you transfer both savings and checkings accounts to my sister, Abbie Grace, on her presentation of certificate of my death.
> Thank you.
>
> ANNA E. BOGGS
>
> Witnesses:
> GEORGE D. WARD
> MARY A. WARD"

This letter was not written by Mrs. Boggs but, as indicated above, was signed by her. Furthermore, it is readily admitted that Mary A. Ward did not sign this document as a witness in the presence of Mrs. Boggs.

Shortly after the death of Anna E. Boggs, who at that time was a resident of Lawrence County, Ohio, Abbie Grace presented the above letter for probate to the Probate Court of said Lawrence County, claiming that such letter constituted a valid testamentary disposition of the funds in the accounts referred to therein. After due consideration the Probate Court of Lawrence County, Ohio entered a final decree which concluded as follows: "It, therefore, is ordered that

such instrument be denied admission to probate and a final entry is hereby ordered refusing to probate such instrument as a Codicil to the Last Will and Testament of Anna E. Boggs, deceased."

It is the position of the plaintiff in this proceeding that the letter of April 29, 1962 constitutes a valid gift *causa mortis* and that by reason thereof she is entitled to the funds in the aforesaid bank accounts. The defendants, on the other hand, contend that the Boggs letter is testamentary in character; that, not being executed in accordance with the law pertaining to wills, it could not effect a testamentary disposition of the funds involved; and that the letter does not constitute a gift *causa mortis* for the reason that it did not effect a present transfer of the bank accounts to the plaintiff.

The defendants further contend that, the Probate Court of Lawrence County, Ohio having found that the Boggs letter was testamentary in character, the matter is res adjudicata. The necessary implication is that if the letter is testamentary it could not constitute a gift *causa mortis*. The matter before the Ohio Court was a summary proceeding involving only the plaintiff in this case. The instant defendants were not parties to that proceeding. Furthermore, it does not appear from the record of the Ohio proceedings that the question involved in the case now before us was therein decided. As stated in Point 2 of the Syllabus of *Hudson* v. *Iguano Land and Mining Co.,* 71 W. Va. 402, 76 S. E. 797, "When the causes of action are different, the former decision is conclusive only as to questions, rights and facts actually decided therein, and nothing more." See *Lane* v. *Williams,* 150 W. Va. 96, 144 S. E. 2d 234; *Pridemore, et al.* v. *Lucas, et al.,* 131 W. Va. 1, 47 S. E. 2d 839; In Re: *United Carbon Company Assessment,* 118 W. Va. 348, 190 S. E. 546; 30A Am. Jur., Judgments, §373. The Probate Court of Lawrence County, Ohio merely denied admission of the Boggs letter to probate. It did not decide expressly whether or not such letter was testamentary in character. Therefore, the defendant's contention that this

matter is res adjudicata by reason of the action of the Ohio Court is without merit.

The sole question to be decided in this case is whether the Boggs letter of April 29, 1962 constitutes a valid gift *causa mortis*. In making this decision we must determine whether the essential attributes or constituent elements of a gift *causa mortis,* as defined by law, exist by virtue of such letter. Only personal property may be transferred by such gift. The donor must make the gift in contemplation of death, either in his last illness or while he is in other imminent peril; he must give up all dominion and control over the subject of the gift so that it may belong to the donee presently, as his own property; the donor must make an actual delivery of the thing given or a delivery of the means of getting immediate possession and enjoyment of the gift. A gift *causa mortis* may be revoked by the donor during his lifetime. *Dickeschied* v. *Exchange Bank, et al.,* 28 W. Va. 340. See also *Waugh* v. *Richardson,* 107 W. Va. 43, 147 S. E. 17; *Claytor* v. *Pierson,* 55 W. Va. 167, 46 S. E. 935; *Seabright* v. *Seabright,* 28 W. Va. 412; Harrison on Wills and Administration, Second Edition, Gifts Causa Mortis, §80 et seq.; 1 Bowe-Parker: Page on Wills, Gifts Causa Mortis, §7.3 et seq.; 38 C.J.S., Gifts, §99; 24 Am. Jur., Gifts, §4; 9 M. J., Gifts, §37.

Although courts do not generally favor gifts *causa mortis*, such gifts will be given legal effect if made in compliance with the above named requirements. It has been held that the doctrine should not be extended beyond its present limits and that evidence of such gift will be regarded with suspicion and scrutinized with care. This caution is prompted by the fact that a gift *causa mortis* presents a chance for fraud and perjury. *Waugh* v. *Richardson,* 107 W. Va. 43, 147 S. E. 17; *Shankle* v. *Spahr,* 121 Va. 598, 93 S. E. 605, 99 Am. St. Rep. 764; 1 Bowe-Parker: Page on Wills, Gifts Causa Mortis, §7.6; Harrison on Wills and Administration, Second Edition, Gifts Causa Mortis, §91. In view of the manner in which a gift *causa mortis* is regarded, it is imperative that every element essential to such gift exists before such gift is afforded legal effect.

Although the plaintiff, in the Ohio court, contended that the Boggs letter constituted a testamentary disposition of the subject funds, she made no such contention in the trial of this case or upon this appeal. Whether or not that document is testamentary in character, it is sufficient to note that it was not executed in accordance with the requirements of law pertaining to disposition of property by will and therefore could not effect a conveyance as a will.

We come now to the consideration of whether the Boggs letter contains the elements essential to a valid gift *causa mortis*. The funds in bank accounts, being personal property, constitute proper subject matter for such gift. 1 Bowe-Parker: Page on Wills, Gifts Causa Mortis, §7.26; 38 C.J.S., Gifts, §99. It is undisputed that Mrs. Boggs signed the letter purportedly making a gift in contemplation of death and during her last illness. These elements are essential to a valid gift causa mortis. However, before a donor can successfully convey the subject of a gift in this manner the other essential elements must be found to exist.

In order to make an effective gift, whether it be *inter vivos* or *causa mortis,* the donor must consummate the transfer as a present gift to the donee, thereby giving such donee the present right to immediate possession of the gift and divesting the donor of possession and all dominion and control over the thing given. This is distinguishable from a gift to be made in the future which connotes a testamentary disposition. *Waugh* v. *Richardson,* 107 W. Va. 43, 147 S. E. 17; *Dickeschied* v. *Exchange Bank, et al.,* 28 W. Va. 340; 1 Bowe-Parker: Page on Wills, Gifts Causa Mortis, §7.9, §7.11.

The foregoing principle is succinctly stated in Harrison on Wills and Administration, Second Edition, Gifts Causa Mortis, §83, as follows: "* * * It has been repeatedly decided that where a gift has no effect until after the death of the doner, the donor retaining the dominion and control over the property, it cannot be sustained as a valid gift either *inter vivos* or *causa mortis* but such a gift is testamentary and all the provisions of the testamentary law must

be complied with to make it effective. Thus, the broad distinction between all forms of gifts and testamentary dispositions. A gift testamentary in character cannot have any effect until after death. A gift not testamentary must take effect at once."

In *Seabright* v. *Seabright, et al.,* 28 W. Va. 412, this Court quoted from *Basket* v. *Hassell,* 107 U. S. 602, 2 S. Ct. 415, 27 L. Ed. 500, as follows: "A *donatio mortis causa* must be completely executed, precisely as required in the case of gifts *inter vivos* subject to be diverted by the happening of any of the conditions subsequent; that is upon actual revocation by the donor, or by the donor's surviving the apprehended peril, or outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor and if the gift does not take effect as an executed and complete transfer to the donee of possession and *title* either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will. * * *".

Demonstrating further that a valid *causa mortis* gift must be effective upon the delivery thereof and not in the future is the following statement in 38 C.J.S., Gifts, §99. "A bank deposit may be the subject of a valid gift causa mortis when the gift is fully executed by such a delivery as is sufficient to confer on the donee a present right to the fund. * * * The delivery must be as a gift in praesenti, and not for the purpose of making a future disposal of it under the directions of the donor."

Delivery of the gift by the donor is an essential element of a valid gift causa mortis, not the mere possession thereof by the donee. Such delivery must take place while the donor is alive. This is well illustrated by the language of Point 9 of the Syllabus of *Dickeschied* v. *Bank,* 28 W. Va. 340, which reads as follows: "If such actual delivery to the donee do not take place during the lifetime of the donor, the authority of such third person to deliver the gift is revoked by the donor's death; the property does not pass to the donee but remains in the donor, and goes to his executor or administrator."

520

Applying these principles to the Boggs letter in the instant case, we find that Mrs. Boggs requested the Guaranty National Bank, at some time in the future and if she should precede her sister in death, to transfer both savings and checking accounts to my sister, Abbie Grace, on her presentation of certificate of my death". Here the intended donor directed the bank to transfer her funds to her sister, not at that time, but at some time in the future. This was not a present gift. It was to have no effect until after the death of the donor. Furthermore, the donor did not relinquish all dominion and control over the subject of the gift. In these circumstances the plaintiff was not the recipient of a fully executed and complete transfer of the funds. She obtained neither possession of such funds nor the means of gaining such possession at the time of the delivery of the letter. Mrs. Boggs, by her letter, did not confer upon the plaintiff a present right to the funds but merely gave directions as to the future disposition thereof.

In this posture the letter of April 29, 1962, which had no effect until after the death of the purported donor, was testamentary in character. It could not, therefore, constitute a valid gift *causa mortis*. Consequently, the subject letter, being neither a valid will nor a valid gift *causa mortis*, must fail in its endeavor to transfer the funds in the bank accounts to the plaintiff.

It is urged on behalf of the plaintiff that the words "if I should die *befor* my sister" are a mere restatement of one of the requirements of a valid gift *causa mortis* and therefore should not be considered such condition as would destroy the gift. While it is essential to the validity of this type of gift that the donor must predecease the donee, it is nonetheless essential that the donor make a present gift as discussed above. This was not done in this case.

The plaintiff further asserts that Mrs. Boggs, by her letter, did all that was required to perfect a gift *causa mortis* to the plaintiff. Although it appears that she did intend to convey the funds in her bank accounts to the plaintiff, such conveyance must have been accomplished in accord-

ance with the methods prescribed by law. Mrs. Boggs could have effected such transfer by a lawfully executed will. She also could have made a gift of such funds by making a present transfer thereof. Mrs. Boggs did neither.

For the reasons stated herein, the judgment of the Circuit Court of Cabell County is reversed and the case is remanded to that court for such further proceedings, consistent with this opinion, as may be proper.

*Reversed and remanded.*