Remanded by Supreme Court, February 22, 2005

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RICHARD DEAN WALKER, a/k/a Ricky Walker,

*Defendant-Appellant.*

No. 03-4514

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BRADLEY DALE WALKER, a/k/a Bradley Walker,

*Defendant-Appellant.*

No. 03-4515

Appeals from the United States District Court
for the Southern District of West Virginia, at Beckley.
David A. Faber, Chief District Judge.
(CR-02-260)

Submitted: April 30, 2004

Decided: June 18, 2004

Before LUTTIG, TRAXLER, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

Heather D. Foster, Jaqueline Ann Hallinan, HALLINAN LAW OFFICES, P.L.L.C., Charleston, West Virginia; Gregory J. Campbell, CAMPBELL LAW OFFICES, Charleston, West Virginia, for Appellants. Kasey Warner, United States Attorney, John L. File, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Brothers Ricky and Bradley Walker pled guilty to aiding and abetting the possession of marijuana with intent to distribute, 18 U.S.C. § 2 (2000), 21 U.S.C. § 841(a) (2000), after they bought twenty pounds of marijuana from an undercover officer. Ricky was sentenced to a term of thirty months imprisonment and Bradley received a term of twenty-seven months imprisonment. Both Ricky and Bradley argue on appeal that the district court clearly erred in finding that they obstructed justice by attempting to mislead the probation officer about the source of currency seized following their arrests and in denying them an adjustment for acceptance of responsibility. *U.S. Sentencing Guidelines Manual* §§ 3C1.1, 3E1.1 (2002). Ricky also challenges the district court's determination that he was ineligible for a safety valve reduction. USSG §§ 2D1.1(b)(6), 5C1.2. We affirm.

The arresting officers seized $68,294.42 in currency, including $22,000 in cash which the brothers paid for the marijuana. $38,000 was stored in a glass jar wrapped in electrical tape that was found behind Ricky's house in the outbuilding where the drug sale had been completed. Ricky was carrying $844, Bradley was carrying $930, and an additional $6520 was found inside Ricky's house. During the presentence investigation, Ricky and Bradley separately told the proba-

tion officer that Ricky had received $60,000 in cash from their aunt, Ruby Conley, who died in 1995, and that the currency seized was primarily money he had received from her. Ricky also submitted a handwritten note which stated:

> I, Ricky D. Walker, received money from Ella Dameron upon request by Ruby Conley. Ella Dameron is [sic] the power of attorney of Ruby Conley's estate. Ruby Conley wanted Ricky Walker to receive $60,000 cash in hand after her death. Today's date is August 25, 1995.

After the probation officer contacted Ella Dameron, another aunt who was the executor of Conley's estate, and reviewed the court documents relating to the estate, he concluded that these were false assertions intended to reduce the Walkers' relevant conduct. Dameron told the probation officer that Ricky did not receive $60,000 from her as stated in the handwritten note; that she was not aware that Conley intended to give Ricky money or any reason why she should; that the brothers had never visited Conley when she was ill; that after Conley's death they threatened to burn Dameron's home if they did not receive money from Conley's estate; that they had taken two boxes from Conley's house which she was later told contained money; that after the brothers' arrests she had refused to provide them with any documentation to back up their claim that the seized money was a gift from Conley; and that she could not be sure whether her signature was on the note.

However, at Ricky's sentencing hearing, Dameron testified that Conley had spoken to her before her death about giving money to Ricky because he suffered from seizures;* that she had signed the handwritten note in August 2000 (after the brothers were arrested) to give Ricky the proof he needed that he acquired $60,000 from Conley; and that she felt an obligation to testify in Ricky's favor. She also said that, on the day the probation officer called her to ask about the handwritten note, Bradley and Ricky came to her house to tell her she would be getting a call from him.

---

*Ricky told the probation officer he had one seizure in 1995 for which the cause was never determined. His sister told the probation officer that Ricky frequently had seizures.

At Bradley's sentencing, Dameron testified that the brothers had not threatened to burn her house if they received nothing from Conley although other family members made such threats; and that the brothers had a close relationship with Conley before her death. She testified that Bradley and Ricky, and possibly their brother Jonathan, were present when she was asked to sign the note in August 2000. Jonathan Walker testified at Bradley's sentencing hearing that he had written the note for Ricky so that Ricky could show how he got the money "in case of taxes and stuff," and that Bradley was not present when he and Ricky took the note to Dameron for her signature. He testified that he did not remember in what year the note was signed.

In sentencing Ricky, the district court determined that the money was not a gift *causa mortis* from Conley to Ricky, as his attorney maintained, because the money was not delivered before Conley's death, *see Grace v. Klein*, 147 S.E.2d 288, 291 (W. Va. 1966), and that, if the money came from Conley's house, Ricky had stolen it. The court further found that the handwritten note dated 1995 but signed in 2000 was clear evidence of an effort to obstruct justice, and that the discrepancy between Dameron's statements to the probation officer and her testimony indicated a possible further attempt by Ricky to obstruct justice. The court therefore found that an adjustment for obstruction of justice was warranted. In consequence, the court determined that an acceptance of responsibility adjustment was not appropriate. The court further found that Ricky had not provided truthful information to the government and thus did not qualify for the safety valve reduction.

In Bradley's case, the district court noted that Dameron's testimony had "evolved" and was inconsistent with what she had told the probation officer, and that Jonathan's testimony was not credible. The court found credible Dameron's testimony that Bradley and Ricky brought her the note in August 2000, shortly after their arrests in June 2000, and asked her to help them out by signing it. The court also credited Dameron's testimony that Bradley was with Ricky when he came to her house to tell her she would be receiving a call from the probation officer, and that all this evidence proved Bradley's involvement in the obstruction of justice. The court found that Bradley did not qualify for acceptance of responsibility and was not eligible for the safety valve reduction.

On appeal, Ricky and Bradley both contest the district court's rulings on obstruction of justice and acceptance of responsibility. Ricky also contends that the court erred in finding that he was ineligible for the safety valve reduction. All these claims are a challenge to the district court's determination of the credibility of Dameron's testimony at their sentencing hearings. The Walkers argue on appeal that the district court clearly erred when it rejected as not credible the portions of Ella Dameron's testimony that supported their assertions to the probation officer. Appellants concede that credibility determinations are generally within the province of the fact finder and are thus not reviewable. *United States v. Feurtado*, 191 F.3d 420, 424 n.2 (4th Cir. 1999) (factfinder's decision as to weight of evidence and credibility of witnesses entitled to great deference); *United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989) (same). They argue that their case comes within the exception that permits appellate review if the judgment or sentence is unsupported by the record. *See Brady v. Thurston Motor Lines*, 726 F.2d 136, 144 (4th Cir. 1984). However, we conclude that the district court's assessment of the credibility of Dameron's testimony was supported by the lack of court documents indicating that Conley left money to Ricky and the inconsistencies between Dameron's statements to the probation officer and those portions of her testimony that were favorable to Ricky's and Bradley's claims at their respective sentencing hearings. We cannot find reason to disturb the court's decision to credit only certain portions of Dameron's testimony. Therefore, we necessarily conclude that the court's determination that the brothers had attempted to obstruct justice was not clearly erroneous.

Moreover, only in an extraordinary case may a defendant receive both an adjustment for obstruction of justice and acceptance of responsibility. *United States v. Hudson*, 272 F.3d 260, 263-64 (4th Cir. 2001). Neither Ricky nor Bradley contend that theirs is an extraordinary case where both adjustments could be applied. We are satisfied that the district court did not clearly err in concluding that neither defendant was eligible for an adjustment for acceptance of responsibility.

Finally, we find no error in the denial of a safety valve reduction to Ricky. If a defendant meets the five criteria set out in § 5C1.2, his offense level may be reduced by two levels. The fifth criteria is that,

by the time of sentencing, the defendant have truthfully provided to the government all information and evidence in his possession concerning the offense. Given the district court's determination that Ricky had provided false information concerning the source of the money seized on June 27, 2000, following his arrest, Ricky did not meet all five criteria set out in § 5C1.2. Therefore, he was not eligible for the reduction under § 2D1.1(b)(6).

We therefore affirm the sentences imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*