UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

Nos. 97-4008(L)
(CR-96-325, CR-95-669)

_____

United States of America,

                                    Plaintiff - Appellee,

        versus

Anthony Feurtado, etc., et al,

                                    Defendants - Appellants.


_____

O R D E R

_____


        The court further amends its opinion filed September 3, 1999,
and amended September 8, 1999, as follows:

        On page 10, first paragraph, lines 13-14 -- the citation to
United States v. Jarrell is corrected to end "(4th Cir. 1998)."

                                    For the Court - By Direction


                                    /s/ Patricia S. Connor
                                    _____
                                            Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 97-4008(L)
(CR-96-325, CR-95-669)

United States of America,

Plaintiff - Appellee,

versus

Anthony Feurtado, etc., et al,

Defendants - Appellants.

O R D E R

The court amends its opinion filed September 3, 1999, as follows:

On page 2, section 2 -- the defendant-appellant in No. 97-4585 is corrected to read "LANCE FEURTADO, a/k/a Desman Smith, a/k/a Lawrence M. Jones, a/k/a Pie, a/k/a Desmond Smith."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

ANTHONY FEURTADO, a/k/a Tony

Feurtado, a/k/a Anthony Paul, a/k/a
Anthony Greene, a/k/a Anthony
Lamar Brown, a/k/a Ginzo, a/k/a
Gap, a/k/a Pretty Tony,
<u>Defendant-Appellant.</u>

No. 97-4008

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

WILLIE GLOVER, a/k/a Jerry Glover,
<u>Defendant-Appellant.</u>

No. 97-4582

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

GERALD BOOKER, a/k/a Linda S.
Buggs, a/k/a Gerald R. Smith, a/k/a
Rufus Vair,
<u>Defendant-Appellant.</u>

No. 97-4583

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 97-4584

KENDALL FEURTADO, a/k/a George
Kendall, a/k/a Unc,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 97-4585

LANCE FEURTADO, a/k/a Desman Smith,
a/k/a Lawrence M. Jones, a/k/a Pie,
a/k/a Desmond Smith,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 97-4590

LANCE FEURTADO, a/k/a Desmen
Smith, a/k/a Lawrence Jones, a/k/a
Pie,
<u>Defendant-Appellant.</u>

2

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ANTHONY FEURTADO, a/k/a Tony

Feurtado, a/k/a Anthony Paul, a/k/a
Anthony Greene, a/k/a Anthony
Lamar Brown, a/k/a Ginzo, a/k/a
Gap, a/k/a Pretty Tony,
Defendant-Appellant.

No. 97-4829

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Solomon Blatt, Jr., Senior District Judge.
(CR-96-325, CR-95-669)

Argued: June 11, 1999

Decided: September 3, 1999

Before WIDENER, NIEMEYER, and KING, Circuit Judges.

_____

Affirmed in part and remanded with instructions by published opin-
ion. Judge Widener wrote the opinion, in which Judge Niemeyer and
Judge King joined.

_____

**COUNSEL**

**ARGUED:** James Harold Feldman, Jr., LAW OFFICES OF ALAN
ELLIS, Ardmore, Pennsylvania; William Rhett Eleazer, ELEAZER &
PERRY, L.L.P., Columbia, South Carolina, for Appellants. John
Michael Barton, Assistant United States Attorney, Columbia, South
Carolina, for Appellee. **ON BRIEF:** Alan Ellis, Peter Goldberger,

3

LAW OFFICES OF ALAN ELLIS, Ardmore, Pennsylvania, for Appellant Anthony Feurtado; Jan Simpson Strifling, Columbia, South Carolina, for Appellant Booker; Leesa Washington, FEDERAL PUBLIC DEFENDER'S OFFICE, Greenville, South Carolina, for Appellant Kendall Feurtado; Heather Lea Smith, Columbia, South Carolina, for Appellant Lance Feurtado; William Clifford Wood, Jr., NELSON, MULLINS, RILEY & SCARBOROUGH, Columbia, South Carolina, for Appellant Davis. J. Rene Josey, United States Attorney, Cameron G. Chandler, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

In this consolidated appeal, codefendants Anthony Feurtado, Willie Glover, Gerald Booker, Kendall Feurtado, and Lance Feurtado entered conditional pleas of guilty to conspiracy to possess with intent to distribute and conspiracy to distribute cocaine and cocaine base and heroin in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. With the exception of Willie Glover, the defendants also entered conditional pleas of guilty to at least one count of money laundering in violation of 18 U.S.C. § 1956. All defendants preserved the right to and now appeal the district court's denial of their motions filed prior to the guilty pleas, including their motions to dismiss their indictments with prejudice based on prosecutorial misconduct. All of them also challenge their sentences as in violation of the plea agreement. Lance Feurtado and Gerald Booker claim a violation of the Speedy Trial Act. Finally, Glover asserts that the evidence does not support the district court's finding of the amount of cocaine attributable to him. We affirm on all issues except the sentences imposed in violation of the plea agreement, which we remand to the district court for either resentencing or withdrawal of the guilty pleas.[1]

_____

[1] Anthony Feurtado's July 19, 1999 Motion for Reconsideration of our May 26, 1999 denial of his Motion to File a Supplemental Pro Se Brief is denied.

Any other outstanding motion not specifically mentioned in this opinion is denied.

4

I.

Defendants first contend that the district court erred when it dismissed the initial indictment against them without prejudice instead of with prejudice as they had requested. On October 18, 1995, a Federal Grand Jury in Columbia, South Carolina, initially indicted defendants on charges related to a substantial drug organization. In so doing it heard the testimony of South Carolina Law Enforcement Division Agent, Charles McNair. The argument goes that, in the course of his Grand Jury testimony, Agent McNair overstepped his bounds when he connected defendants to a series of New York homicides, including the killing of a police officer, unrelated to the charges for which they were being indicted.

Defendants initially moved that the indictment be dismissed due to prosecutorial misconduct. The motion, of course, implied dismissal with prejudice. Attached to that motion was an affidavit by the lawyer who represented one individual actually convicted for one of the murders in which he stated that "[a]t no time was a person named Anthony Feurtado ever mentioned as being involved in the murder or as a coconspirator to its commission." A hearing on the matter was held on March 27, 1996, at which Agent McNair testified that while he based his testimony regarding the connection between the Feurtado drug organization and the murder of Officer Byrnes on a conversation with a New York City police detective, he later learned that there was in fact no connection between the two. The district court decided that "the only misconduct [attributable to the government] . . . was unintentional misconduct."**2** Accordingly, the district court dismissed the

_____

**2** Defendants contend that this finding of no intentional misconduct was clearly erroneous and ask that we dismiss their indictments with prejudice on that basis. We find, however, that the district court's decision in that regard was essentially a decision as to the weight of evidence and a credibility determination, and as such it is entitled to great deference by this court. United States v. Dickerson, 166 F.3d 667, 676 n.6 (4th Cir. 1999) (citing United Stated v. Oregon State Med. Soc'y, 343 U.S. 326 (1952)). Not only did the court review the grand jury transcripts, it also held a hearing at which it heard testimony from Agent McNair regarding, among other things, the motivation behind his testimony and his belief in the truth of his statements at the time. Given the numerous sources from which Agent McNair's information came, the district court's determination that he "acted with the best of intentions" is supported by the record. The findings of the district court with respect to the matter are not clearly erroneous.

5

indictment without prejudice. An order to that effect was entered June 10, 1996, nunc pro tunc to March 17, 1996, which gave effect to the court's finding of "no evidence of willful prosecutorial misconduct in this case." Defendants moved to reconsider, but that motion was denied.

In the meantime, the grand jury reindicted defendants on April 3, 1996, and the government sought and received a superseding indictment on July 9, 1996. Motions to dismiss both of these indictments were also filed and, subsequently, denied by the district court.

The Supreme Court set the standard for dismissal of indictments in Bank of Nova Scotia v. United States, 487 U.S. 250 (1988), which held that a defendant is entitled to dismissal of an indictment only where actual prejudice is established. In circumstances such as those presently before us that prejudice must amount either to proof that the grand jury's decision to indict was substantially influenced, or that there is "grave doubt" that the decision to indict was substantially influenced, by testimony which was inappropriately before it. Bank of Nova Scotia, 487 U.S. at 256.

The district court determined that aside from Agent McNair's testimony, "the testimony of Garry Feurtado and Kevin Barrett, alone, if believed, establishes probable cause to support the charges contained in the indictment." Additionally, the court found that certain portions of Agent McNair's testimony, not those contested here, provided independent corroboration for that evidence. As noted, the district court, after examination of the grand jury testimony and a hearing at which oral testimony was taken, found that there was no presentation of the questionable testimony before the grand jury, knowing it was questionable, and there was no evidence of willful prosecutorial misconduct in this case. All of the district court's findings mentioned in this paragraph are not clearly erroneous.

The court then concluded that while it did not find the defendants had established that improper testimony substantially influenced the grand jury's decision to indict, it did find that it had some doubt that the grand jury's decision to indict was free from the influence of that testimony. In view of that, the court dismissed the indictment without

6

prejudice. With that the defendants had all the relief to which they might have been entitled.**3**

We are of opinion the district court took the correct course. In view of the finding that the presentation of the objectionable portions of McNair's testimony were inadvertent and that other portions of the grand jury's testimony free from taint supported the indictment, deterrence would have been the only basis remaining for dismissal. In Bank of Nova Scotia, the court stated the rule in such cases:

> . . . deterrence is an inappropriate basis for reversal where means more narrowly tailored to deter objectionable prosecutorial conduct are available. [internal quotations removed]

487 U.S. at 255.

In this case the district court correctly chose a more narrowly tailored remedy and dismissed the indictment without prejudice. The new indictment issued on April 3, 1996 was handed down by a grand jury which considered only a transcript of witnesses' testimony before the original grand jury, which transcript did not include McNair's testimony.

Thus, the indictment on which the defendants were tried was entirely free of taint caused by the introduction of McNair's objectionable testimony before the original grand jury, and there could not have been any prejudice to the defendants on that account. Again pursuant to Bank of Nova Scotia, we decline to invoke the supervisory power of an appellate court to circumvent a harmless error inquiry. 487 U.S. at 254. We are of opinion that there was no error in the procedure adopted by the district court in this case. In the unlikely event any error be found, it was harmless.

_____

**3** Accord: United States v. Price, 857 F.2d 234, 236 (4th Cir. 1988); United States v. Hayes, 775 F.2d 1279, 1283 (4th Cir. 1985).

7

II.

Additionally, defendants argue, based on United States v. Singleton, 144 F.3d 1343 (10th Cir. 1988), that their indictments should have been dismissed with prejudice in light of the fact that Gary Feurtado and Barrett received something "of value . . . because of the testimony" they gave before the grand jury, in violation of 18 U.S.C. § 201(c)(2), when the government entered into Barrett's plea agreement and moved for sentence reductions in both those witnesses' cases. Defendants contend that the government itself committed a violation and that such prosecutorial misconduct warrants dismissal of the indictment with prejudice. The en banc court in the Tenth Circuit rejected the Singleton panel's interpretation of the statute which would have precluded the type of plea bargaining which is institutionalized within our criminal justice system. United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999) (en banc). We reject this argument as well.

III.

Lance Feurtado and Gerald Booker argue that violations of the Speedy Trial Act, 18 U.S.C. § 3161, et seq., require their release and discharge from criminal liability on the indictment. The argument goes that § 3164(b) of the statute requires that a criminal trial commence not later than 90 days following the beginning of continuous detention for the crime charged. In this case, Lance Feurtado was arrested September 14, 1995 and Booker was arrested September 28, 1995. Their guilty pleas were agreed to on January 14, 1997, some 16 months later, thus, they contend they should be discharged. Not taken account of, however, or only obliquely, is the fact that the original indictment was dismissed without prejudice and they were reindicted by a new grand jury as earlier discussed in this opinion. Added to this was a superseding indictment after the reindictment. Also, there were numerous delays and continuances, most of which were agreed upon, some at the instance of the defendants. There were many motions filed and disposed of, and we note the docket sheets indicate there were initially 12 defendants indicted, scattered from coast to coast and from New York to South Carolina. Most notably there is even now no claim of prejudice under § 3164(c) for not letting Lance Feurtado and Booker to bail. Even assuming the periods of delay held

8

by the district court to be excludable under the Speedy Trial Act were erroneously arrived at, especially absent prejudice, we have held in United States v. Howard, 590 F.2d 564, 569 (4th Cir.), cert. denied, 440 U.S. 976 (1979), that "in any event, the sanction for non-compliance . . . [with § 3164] is release, not dismissal of the indict-ment." The argument of these defendants that Strunk v. United States, 412 U.S. 434 (1973), requires release for any violation of the Speedy Trial Act is not well taken. Strunk was a decision for an acknowl-edged Speedy Trial violation under the Sixth Amendment, not a statu-tory violation of the Speedy Trial Act, which was not enacted until 1974. We decline to impose the penalty of dismissal on the United States for such merely technical violations of the Speedy Trial Act, assuming, not deciding, that they exist, especially when that statute itself does not provide for dismissal of the indictment under § 3164(c), rather for release from custody.

The defendants, Lance Feurtado and Booker, acknowledge that all of the time between their arrests and their pleas of guilty was exclud-able under § 3161(h)(1) except for certain defined periods they claim as nonexcludable time, which we will consider separately.

A.

Lance Feurtado claims a total of 98 nonexcludable days as follows: 14 days between September 14, 1995, the date of his arrest, and Sep-tember 27, 1995, his initial appearance in the District Court of South Carolina[4]; 40 days between October 6, 1995, the date of his detention hearing, and November 16, 1995, the date of a motion filed by another defendant, Todd Feurtado. (In his brief, Lance Feurtado acknowledges "there were various overlapping discovery motions pending from October 5, 1995, until the execution of the first consent order of continuance in Feurtado I on December 7, 1995"), Brief at. 56; and 44 days from March 27, 1996, the date of dismissal of the first indictment until May 10, 1996, the date of Lance Feurtado's motion for continuance. Only four of these are nonexcludable days, however, as we demonstrate.

_____

[4] Why this period is not 13 days is not explained.

9

With respect to the claim of 14 nonexcludable days from September 14, 1995 until September 27, 1995, the statute involved, § 3161(h)(1)(H), provides that time consumed in excess of 10 days for transportation of a defendant from another district is presumed to be unreasonable. The district court held that 4 days were nonexcludable and that 10 days were excludable. This is in compliance with the statute and is as favorable a ruling for Lance Feurtado as might be hoped for here. With respect to the period between October 6, 1995 and November 16, 1995, the defendant acknowledges that there were various overlapping discovery motions pending during all of that period. The fact that some of the motions were for discovery and were filed by other defendants does not mean that the delay is nonexcludable time and we have so held in United States v. Jarrell, 147 F.3d 315, 316 (4th Cir. 1998) (other defendants), United States v. Sarno, 24 F.3d 618, 622 (4th Cir. 1994) (other defendants), United States v. Velasquez, 802 F.2d 104, 105 (4th Cir. 1986) (all time between the filing of a motion and the conclusion of the hearing on the motion), and United States v. Tinsley, 800 F.2d 448, 449-450 (4th Cir. 1986) (discovery and inspection and other motions).

For the period of 44 days between March 27, 1996 and May 10, 1996, between the dismissal of the first indictment and Lance Feurtado's motion for a continuance, as the report of the magistrate judge found without refutation, there were motions pending under the first indictment that carried over to the superseding indictment of April 3, 1996. In United States v. Riley, 991 F.2d 120 (4th Cir.), cert. denied, 510 U.S. 949 (1993), we held that a suppression motion carried over to a retrial following a mistrial, and we think that case governs the situation here. Thus, we conclude that of the time claimed as nonexcludable by Lance Feurtado there are four days nonexcludable. Even if we construe his brief as a request to dismiss the indictment under § 3162(a)(2), and it is doubtful that we should, the record does not show but four days of nonexcludable time for dismissal of the indictment under § 3162(a)(2) rather than the 70 days required under § 3161(c)(1).

We thus conclude as to Lance Feurtado there has been no violation of the Speedy Trial Act of sufficient consequence to discharge him.

10

B.

As to Booker, he claims nonexcludable time of 102 days. The first is a period of 61 days between October 5, 1995 and December 7, 1995. He acknowledges that during this period of time there were pending motions of codefendants. We hold that this time was not excludable in his case for the reasons we have just expressed in Part III A, just above, for Lance Feurtado.

The date of Booker's arrest is uncertain. He claims 37 days from the time of his arrest to his first appearance in the district court. In his brief, he does not state either the date of his arrest or the date of his first appearance. The docket sheet, A. 25, shows his arrest was October 23, 1995. The magistrate judge's report has it as September 28, 1995. To give Booker the benefit of the doubt, we will use the September 28, 1995 date of arrest and use the magistrate judge's report of November 3, 1995 for the date of his first appearance, which would give him nonexcludable time there of 36 days, provided the time is nonexcludable.**5** Even if this 36 or 37 day period was nonexcludable time, which we doubt, and which we do not have to decide, it is far below the 70 day nonexcludable time required by § 3161(c)(1) and § 3162(a)(2). So the 70 day period of nonexcludable time has not run and he is not entitled to be discharged.**6**

_____

**5** The parties and the magistrate judge treat this period as 37 days.

**6** The time in excess of ten days under § 3161(h)(1)(H), 26 or 27 days, would seem to have run in a time computation under § 3164. Since Booker is not entitled to relief under that section in any event, that is not a question we have to decide, and, even if we had to decide it, the time is less than the 90 day period required in § 3164.

We emphasize also United States v. Palomba, 31 F.3d 1456 (9th Cir. 1994), under like facts as here, held that under § 3161(c) the 70 day period starts to run only when the defendant is brought before a judicial officer in the district in which the matter is pending. Thus the 44 days claimed as nonexcludable is in fact and law excludable from the 70 day period, and alternately we so hold.

11

IV.

All defendants further assert that the district court violated Fed. R. Crim. P. 11(e)(3) and (4), by adding the minimum five-year period of supervised release required by 21 U.S.C. § 841(b)(1)(A) to the sentence agreed upon in their respective plea agreements. If the court accepts a plea agreement, Fed. R. Crim. P. 11(e)(3) and (4) require the court to inform the defendant that it will embody in the sentence the disposition provided for in the plea agreement, or if it rejects the agreement, the court must give the defendant the opportunity to withdraw the plea. The government concedes that the defendants were not advised by the court that they faced a mandatory five-year term of supervised release in addition to the sentence of imprisonment stipulated in the plea agreement and that the additional term of supervised release results in a sentence that exceeds that which the record indicates the defendants understood they could receive as a result of their guilty pleas. The government further concedes that, under United States v. Good, 25 F.3d 218 (4th Cir. 1994), and United States v. Thorn, 153 F.3d 130 (4th Cir. 1998), the failure to inform the defendants of this additional mandatory term is plain error and the error is not harmless as it affects the substantial rights of the defendants.**7**

In accepting the plea agreements, the district court did inform each defendant that in the event the government backed out of the plea agreement or in the event that the court did not accept the plea agreement, the defendant would have the right to withdraw his plea. In light of this, as well as the requirements of Fed. R. Crim. P. 11(e)(3) and (4) not to mention the overtone of constitutional implications, we remand this issue to the district court as to all defendants. On remand the district court may, in its discretion, see Moore v. United States, 592 F.2d 753, 756 (4th Cir. 1979), accept the respective plea agree-

_____

**7** We note that the government did not concede this issue as to defendants Willie Glover and Gerald Booker in its opening brief because Glover's and Booker's motions to join this issue (February 8, 1999) and this court's grant of those motions on February 26, 1999 occurred after the government had submitted its brief. However, the record supports Glover's and Booker's assertion that they are entitled to the same relief and the government did not dispute the issue as to Glover or Booker at oral argument.

12

ment of an individual defendant and resentence the defendant so that the sentence of imprisonment plus the statutory five year period of supervised release does not exceed the actual term of imprisonment stated in the plea agreement. In the alternative, the district court may reject the plea agreement and allow the defendant to withdraw his guilty plea and plead again.

V.

Willie Glover challenged the presentence report and now challenges the district court's attributing to him ten kilograms of cocaine for sentencing purposes.

We review the district court's findings as to quantity of drugs attributed to Glover for clear error. United States v. Cook, 76 F.3d 596, 604 (4th Cir. 1996). The 10 kilograms of cocaine at issue was attributed to Glover as 12 kilograms in his presentence report. A hearing was held and the government called Agent McNair who testified that after Garry Feurtado was arrested in February 1995, he began to cooperate with the government. McNair testified that Garry Feurtado had both stated to him and testified before the Grand Jury that on September 3, 1994 he (Garry Feurtado) gave Willie Glover approximately 10 kilograms of cocaine in New Bronx, New York and that Glover delivered the cocaine to Tony Feurtado in Columbia, South Carolina by car and that he (Garry Feurtado) then flew to South Carolina on September 5 where he met with Glover and Tony Feurtado.

Glover attempted to rebut this testimony at the hearing with a transcript of a telephone recording of his conversation from a wire tap of his New York number on September 5, 1994 at around 10:14 a.m. which he claims proves he was not in South Carolina on that date. At that hearing, Special Agent McNair testified that it was Glover's voice on this recording but that it did not prove that Glover was actually at the location of the New York number because of the capabilities of three-way calling and call-forwarding. Glover also testified at the sentencing hearing that he "never touched any drugs, moved any drug from A to B." Glover testified that on September 3, codefendant Tony Feurtado called him and asked him to take Mark Coleman out to Garry Feurtado's house. He said that he did not go to Garry Feurtado's house because he knew drugs would be involved, and that he

13

was not going to "travel with no drugs". He testified that instead he picked up Mark Coleman and took him directly to the airport and dropped him off there.

The government then introduced transcripts of other phone conversations, including a conversation on September 3, 1994 in which Tony Feurtado said to Glover "[e]verything is ready for you. It ain't no biggie." When asked about that conversation, Glover testified that he understood that he was "to take Mark Coleman to meet Garry Feurtado, to bring him along with me to South Carolina. . . . I guess it was about the drugs but I didn't make the trip." In a subsequent telephone conversation identified as call number 3896, a person identified as Shiquana asks Glover where he is, to which Glover responds "I'm in South Carolina", to which Shiquana responds "No, you ain't quite there yet."

The district court found that Garry Feurtado's testimony before the Grand Jury was corroborated by recordings of telephone conversations between Glover and others and that the preponderance of the evidence supported that Glover did participate in the alleged transaction concerning the contested ten kilograms of cocaine. It found Glover responsible for 10 kilograms of cocaine. This finding is not clearly erroneous.

Whether or not Glover personally handled the drugs, the weight of the evidence supports that a drug transaction took place on September 3, 1994 involving 10 kilograms of cocaine and coconspirators Glover, Coleman, Tony Feurtado, and Garry Feurtado. The evidence supports that this transaction was facilitated by Glover or at the least was foreseeable by him, and the drugs involved in this transaction are properly attributed to Glover for purposes of sentencing. See United States v. Williams, 986 F.2d 86, 90-91 (4th Cir. 1993). We affirm the district court on this issue.**8**

_____

**8** Although a dispute over a quantity of drugs may seem to be unusual in view of the guilty plea, it may be required. See United States v. Gilliam, 987 F.2d 1009 (4th Cir. 1991).

14

VI.

We thus affirm the convictions of all of the defendants. We affirm the sentence of Willie Glover so far as it takes issue with the attribution to him of 10 kilograms of cocaine for sentencing purposes. On remand the district court, at its option, will either resentence each of the defendants so that the total sentences imposed, including the five year period of supervised release, will not exceed the sentence agreed upon in their respective plea agreements, or, alternately, the district court, in its discretion, may allow each defendant to withdraw his guilty plea and plead again.

<u>AFFIRMED IN PART AND REMANDED</u>
<u>WITH INSTRUCTIONS</u>

15