UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4190

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM BYRON BOWMAN,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Danville.  Jackson L. Kiser, Senior District Judge.  (4:05-cr-00018-jlk)

Argued: October 26, 2006          Decided:  February 1, 2007

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Phillip Richard Lingafelt, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant. Edward Albert Lustig, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Byron Bowman appeals his conviction in the Western District of Virginia for possession of a firearm by a convicted felon, in contravention of 18 U.S.C. § 922(g), and his resulting sentence of 210 months' imprisonment. With respect to his conviction, Bowman maintains that the district court erred in failing to suppress evidence obtained in an unconstitutional search of his home. With regard to his sentence, Bowman asserts that the court erroneously ruled that he had previously been convicted of three serious drug offenses that had occurred on separate occasions — a finding that rendered him subject to the enhanced sentencing provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"). As explained below, we reject Bowman's first assignment of error, and thus affirm his conviction. We agree with his second contention, however, and, as a result, vacate his sentence and remand for further proceedings.[1]

---

[1]Bowman has also appealed the district court's denial of his motion for a downward variance from the advisory Guidelines range to which he was subject as an armed career criminal. Because we vacate his sentence and the court's finding that he is subject to the ACCA, we need not address his contention on the downward variance issue.

2

I.

A.

On November 18, 2003, a woman named Angela Prater, with whom Bowman was romantically involved, called 911 to report that Bowman had assaulted her at his home in Henry County, Virginia. Several officers of the county Sheriff's Department responded to the call. When the officers arrived at the scene, Bowman was standing outside his residence. The officers asked Bowman to accompany them to the police station to answer questions about Prater's allegation. Bowman agreed to go with the officers, but said that he first needed to go inside his home to put on a shirt and shoes.

What happened next is in dispute. According to Steven Wells, one of the responding officers, he asked Bowman, "Do you mind if I go [inside] with you?" and Bowman responded, "No." J.A. 45.[2] Bowman, however, denies that the officers requested permission to enter his home. Rather, he asserts that the officers simply informed him that "[w]e need to go with you inside to get your shoes." Id. at 35. The parties agree that officer Wells, along with some other officers, did accompany Bowman into his residence. Once inside, according to officer Wells, he asked Bowman, "Do you mind if I look around?" and Bowman again gave his consent. Id. at

_____

[2]Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

3

45. Bowman, though, denies that he gave the officers permission to look around the house.

The remaining facts are not in material dispute. Inside Bowman's residence, Wells observed a homemade device used for smoking crack cocaine (the device was a beer can that had been adapted to that purpose). Upon discovering this drug paraphernalia, Wells decided to apply for a warrant to search the residence. Consistent with established Sheriff's Department procedures, the officers secured the scene by walking through the residence and ensuring that no one remained inside while the search warrant was being obtained. During that process, the officers discovered the butts of two marijuana cigarettes in plain view, in an ashtray on the bathroom counter.

Officer Wells then applied to the state magistrate court for a search warrant, asserting probable cause on the basis of the homemade crack-smoking device and the marijuana found in Bowman's residence. In the affidavit supporting his warrant application, Wells stated that Bowman had given him permission to look around the home. A state-court magistrate issued the requested search warrant, and when the officers executed it, they found two twelve-gauge shotguns. After the search of Bowman's residence, the officers requested, and Bowman granted, his written consent to search a nearby garage that he owned.

4

B.

Because Bowman had been previously convicted of several felonies, the discovery of the shotguns in his home led to his federal indictment, on June 2, 2005, for possession of a firearm by a convicted felon, in contravention of 18 U.S.C. § 922(g). On August 22, 2005, Bowman moved to suppress the shotguns, asserting that the search of his home violated the Fourth Amendment. In his suppression motion, Bowman maintained that Wells had falsely asserted, in his affidavit supporting the search warrant application, that Bowman had given the officers permission to enter his home and look around. Bowman contended that, absent Wells's false statement, the magistrate would have recognized that the drugs and drug paraphernalia found during the initial entry into the residence were the fruit of an unlawful search, and thus could not serve to establish probable cause for the warrant. Because probable cause would not have existed absent Wells's alleged false representation, Bowman maintained, the search warrant was invalid and unconstitutional.

On August 29, 2005, the district court conducted an evidentiary hearing on Bowman's suppression motion. Bowman testified that he had not given the officers permission to enter or look around his home when they responded to Prater's 911 call. He also asserted that he did not trust the Henry County Sheriff's Department, having had unpleasant experiences with them in the

5

past, and that it was thus implausible that he would have allowed them to enter or search his dwelling. The Government responded with officer Wells's testimony that Bowman had given him permission to enter the residence and look around, as well as the evidence of officer David Morris — who had been present during the search — that Bowman had given Wells and the other officers permission to enter. The Government also proffered Bowman's written consent to the search of his off-site garage, to rebut his contention that he would not have consented to a search of his home because he distrusted the Sheriff's Department.

The district court denied Bowman's suppression motion, discrediting his testimony and crediting that of officers Wells and Morris. The court found it significant that Bowman had given the officers written consent to search his garage. That evidence, the court concluded, undercut Bowman's claim that he would not have consented to a search because he distrusted the authorities. And, more generally, the court found that "the officers' account of what happened is very lucid and logical," and explained that, "frankly, I just don't believe Mr. Bowman." J.A. 62. Thus, the court found that the officers' initial, limited search of Bowman's home had been conducted with Bowman's consent. As a result, the shotguns discovered there were admitted into evidence at his one-day jury trial, conducted September 1, 2005, and he was found guilty as charged.

In preparation for Bowman's sentencing, the probation officer prepared a Presentence Investigation Report (the "PSR"), which was submitted to the sentencing court on October 14, 2005. The PSR took the position that Bowman was subject to an enhanced sentence under the ACCA because he had three previous convictions for serious drug offenses (as defined by the ACCA) committed on occasions different from one another. The first of these three ACCA-predicate convictions — the PSR's characterization of which Bowman does not challenge in this appeal — was a 1980 conviction in Franklin County, Virginia, for distributing marijuana and cocaine (the "Franklin County conviction"). The PSR specified that Bowman had also been convicted in Henry County, Virginia, in 1980, on two counts of distribution of marijuana, and that these two offenses had occurred on separate occasions — March 14, 1979, and January 13, 1980 (the "Henry County convictions"). The PSR identified the Franklin County conviction, plus the two Henry County convictions, as the three predicate convictions that qualified Bowman as an armed career criminal under the ACCA.

At Bowman's February 3, 2006 sentencing hearing, the probation officer testified regarding how he had determined the nature of the Henry County convictions. As evidence of the convictions themselves, the officer had relied on two sentencing orders, both dated November 5, 1980, which specified that Bowman had been

7

convicted of the offense of "Distribute Controlled Drug." J.A. 117, 120. One of the sentencing orders bore docket number CR-80-0213 and ordered that Bowman serve five years in prison (the "First Sentencing Order"). The other carried docket number CR-80-0214 and also ordered five years' imprisonment, but suspended two years of that sentence (the "Second Sentencing Order"). The sentencing orders themselves, however, did not establish that the offenses for which Bowman was sentenced had occurred on separate occasions, because they did not include the dates of his offense conduct. For that information, the probation officer had examined two indictments, both returned by the Henry County grand jury in January 1980. One, labelled "Case A," alleged that Bowman had distributed marijuana on January 13, 1980 (the "Case A Indictment"). The other, labelled "Case B," alleged that Bowman had distributed marijuana on March 14, 1979 (the "Case B Indictment"). Significantly, neither of the two indictments bore a docket number or any other information linked to either of the sentencing orders. The probation officer testified, however, that he had found the Case B Indictment in the same file folder as the First Sentencing Order and the Case A Indictment in the same file folder as the Second Sentencing Order. On that basis, he concluded that the First Sentencing Order was for a conviction on the March 14, 1979 offense alleged in the Case B Indictment, and that the Second Sentencing Order was for a conviction on the January 13,

1980 offense alleged in the Case A Indictment. The sentencing court relied on the probation officer's testimony as to the circumstances in which he had located the indictments and sentencing orders, and found that "the documents, together with the testimony, bear out that the presentence report is accurate" in its assertion that the two Henry County convictions were for offenses that had occurred on separate occasions. J.A. 92. Bowman objected, asserting that the court could not properly consider the probation officer's testimony in finding the foregoing facts concerning Bowman's prior convictions. The court overruled that objection, however, and determined that Bowman was subject to an enhanced sentence as an armed career criminal.

Because he was classified an armed career criminal, Bowman's offense level under the Guidelines was 33, which, together with his criminal history category of V, produced an advisory sentencing range of 210 to 262 months. The sentencing court's application of the ACCA also rendered Bowman subject to a mandatory minimum sentence of 180 months. After denying Bowman's motion for a downward variance to the 180-month statutory minimum, the court sentenced him to 210 months' imprisonment, the bottom of his Guidelines range. Had Bowman not been deemed an armed career criminal, his statutory <u>maximum</u> sentence would have been 120 months, and his advisory Guidelines range would have been 33 to 41 months.

Bowman has appealed his conviction and sentence, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a district court's findings of fact — including those underlying the denial of a suppression motion — for clear error. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). A finding of fact is clearly erroneous when, through our review of the evidence, we are left with the definite and firm conviction that a mistake has been committed. United States v. Singh, 363 F.3d 347, 354 (4th Cir. 2004) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). In reviewing a district court's factual findings, we give great deference to the court's credibility determinations. See United States v. Feurtado, 191 F.3d 420, 424 n.2 (4th Cir. 1999). We review de novo the legal rulings made by a sentencing court. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989).

## III.

By this appeal, Bowman first contends that the district court erred in finding that he consented to the initial search of his home by the authorities, and thus erroneously denied his motion to suppress the shotguns that were found pursuant to the search warrant. Second, he maintains that the court erroneously relied on

10

the probation officer's testimony to find that the two Henry County convictions had occurred on separate occasions, and therefore erred in sentencing him as an armed career criminal.  We address these contentions in turn.

A.

Bowman first maintains that the district court erred in failing to suppress the shotguns found in the search of his residence.  He asserts that the search warrant under which the guns were found and seized was invalid and unconstitutional, because it depended on officer Wells's statement — which Bowman contends was false — that Bowman had consented to the initial, limited search of his home.  The nub of Bowman's position in this regard, then, is that the court erred in its factual finding that, when Bowman entered his residence to get dressed, he gave the officers permission to accompany him and look around.

Put simply, the court's finding that Bowman consented to the officers' initial entry and search of his home is not clearly erroneous.  The evidence on whether the initial search was consensual consists of the competing testimony of Bowman, on the one hand, and officers Wells and Morris, on the other, plus Bowman's written consent — given to the authorities the same day as the search of his residence — for a search of the nearby garage that he owned.  The court, based on its firsthand assessment of the

11

witnesses' demeanor and veracity, found the officers' testimony to be credible and found that Bowman was not credible. The sole item of non-testimonial evidence — Bowman's written consent to the search of his garage — supports the court's finding. Moreover, we agree with the court that the officers' version of events is wholly plausible. Bowman points to no evidence that would leave us with a definite and firm conviction that the court made a mistake in finding that he consented to the challenged search. In these circumstances, we must conclude that the court did not err in denying Bowman's suppression motion.

B.

Bowman's second contention is that the district court erroneously relied on the probation officer's testimony in finding that the two Henry County offenses occurred on separate occasions. Had the court not made that finding, Bowman asserts, he would not have been classified an armed career criminal, and would not have been subject to the resulting sentence enhancement. We agree with Bowman's position in this regard and thus vacate his sentence.

As pertinent here, the ACCA enhances the sentence of a felon who possesses a firearm after having been convicted of three or more serious drug offenses that occurred on separate occasions. See 18 U.S.C. § 924(e)(1). The ACCA's definition of "serious drug offense" includes, inter alia, any state-law drug distribution

12

crime for which the longest possible prison term is at least ten years.  See id. § 924(e)(2)(A)(ii).  If a defendant is deemed to be armed career criminal under the ACCA, he is subject to a minimum sentence of fifteen years in prison.  See id. § 924(e)(1).  Moreover, such a defendant suffers serious consequences under the advisory Guidelines:  his offense level is set at a minimum of 33, well more than double the base offense level of 14 that applies to a felon in possession of a firearm who is not subject to the ACCA.[3] See U.S.S.G. §§ 2K2.1(a)(6), 4B1.4(b)(3)(B).

Typically, a sentencing court, rather than a jury, makes the factual finding on whether a defendant has previous convictions qualifying him for enhanced sentencing under the ACCA.  Like any fact that increases a defendant's possible punishment, however, the fact that a defendant's prior convictions bring him within the ACCA must be established through a procedure consistent with his constitutional right to trial by jury.  See Apprendi v. New Jersey, 530 U.S. 466, 487-88 (2000); United States v. Thompson, 421 F.3d 278, 281-82 (4th Cir. 2005); United States v. Washington, 404 F.3d 834, 839 (4th Cir. 2005).  Accordingly, in determining the fact of an ACCA-predicate conviction, a court must rely only on records that were generated in a prior judicial proceeding comporting with the Sixth Amendment, and that conclusively establish facts either

---

[3]The minimum base offense level of 33 for an armed career criminal may be reduced by an adjustment for acceptance of responsibility.  See U.S.S.G. § 4B1.4(b)(3) & note.

admitted by the defendant or inherent in the previous conviction. See Thompson, 421 F.3d at 281-82; see also Shepard v. United States, 544 U.S. 13 (2005) (specifying sources eligible for consideration in determining nature of conviction based on guilty plea). Examples of the sources suitable for this purpose include an earlier proceeding's charging documents, jury instructions, formal rulings of law and findings of fact, judgments, and plea agreements. See Thompson, 421 F.3d at 281-82. We have deemed unsuitable, by contrast, such sources as police reports and transcripts of testimony, because assertions made therein are not inherently confirmed by the prior conviction, and therefore have not been properly established by an earlier judicial proceeding. See id.

The application of this legal framework to the instant facts is straightforward. The probation officer's testimony was not a source that the sentencing court should have considered in finding facts concerning Bowman's prior convictions in Henry County, because it was not a record of a fact conclusively established in an earlier judicial proceeding. Yet the court explicitly relied on that testimony to find that the First and Second Sentencing Orders represented convictions for the offenses alleged in the Case B and Case A Indictments, respectively, and — by extension — that the two Henry County offenses had occurred on separate occasions. The court's finding in that regard was thus erroneous. Because this

14

finding was essential to Bowman's being sentenced as an armed career criminal, we vacate his sentence and remand for such further proceedings as may be appropriate.

IV.

Pursuant to the foregoing, we affirm Bowman's conviction, but vacate his sentence and remand.

AFFIRMED IN PART, VACATED
IN PART, AND REMANDED

15