452 S.E.2d 444

Brenda J. MONGOLD and Linda L. Mullenax, Plaintiffs Below, Appellees,

v.

Eulda K. MAYLE, Defendant Below, Appellant.

No. 22379.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 1994.

Decided Dec. 8, 1994.

John G. Ours, Petersburg, for appellant.

James Paul Geary, Geary & Geary, Petersburg, for appellees.

**McHUGH, Justice:**

The appellant, Eulda K. Mayle, appeals an order of the Circuit Court of Grant County, which held, in a declaratory judgment action, that *W.Va.Code*, 42–3–7 [1992], which concerns premarital wills, precludes the application of *W.Va.Code*, 42–3–1 [1992], which concerns a surviving spouse's right to an elective share. The appellees are Brenda J. Mongold and Linda L. Mullenax. For reasons set forth below, we reverse the order of the circuit court.

## I.

Jesse Mayle, a resident of Grant County, had two children from his first marriage. On June 22, 1981, after divorcing his first wife, Jesse Mayle prepared a will in which he left his entire estate to his two children from his first marriage: the appellees.

On October 28, 1983, approximately two years after he prepared the will, Jesse Mayle married Eulda K. Mayle, the appellant. There were no children born of that marriage. On March 1, 1993, Jesse Mayle died. He was survived by his wife, the appellant, and his two daughters, the appellees. On May 24, 1993, pursuant to *W.Va.Code*, 42–3–4 [1992], the appellant filed a petition with the County Commission of Grant County seeking her elective share pursuant to *W.Va.Code*, 42–3–1 [1992].

The appellees filed a declaratory judgment action in the Circuit Court of Grant County to determine whether or not the appellant was entitled to an elective share of her husband's estate in view of the premarital will. Eventually, the parties submitted facts upon which they agreed, including the fact that the total probate estate will probably be less than $50,000.

The circuit court found that the appellant was not entitled to an elective share of her decedent spouse's estate pursuant to *W.Va. Code*, 42–3–1 [1992] since *W.Va.Code*, 42–3–7 [1992], regarding premarital wills, was controlling. The order effectively precluded the appellant from taking anything from her husband's estate.

## II.

Initially, we note that in the case before us, *W.Va.Code*, 42–3–1, *et seq.*, the pertinent statutes which control the distribution of the decedent's estate to the surviving spouse, were modeled upon the Revised Uniform Probate Code (1990).[1] West Virginia was the first state to enact the intestacy and elective-share provisions of the Revised Uniform Probate Code. Patricia J. Roberts, *The 1990 Uniform Probate Code's Elective–Share Provisions—West Virginia's Enactment Paves the Way*, 95 W.Va.L.Rev. 55, 57 (1992). Because these statutes were enacted so recently, this Court has not had an opportunity to interpret or apply *W.Va.Code*, 42–3–1, *et seq.* Therefore, references to portions of the Revised Uniform Probate Code are important in order to facilitate an understanding of the statutes at issue in the case before us. An examination of the reasons for the enactment of *W.Va.Code*, 42–3–1 [1992] and *W.Va.Code*, 42–3–7 [1992] is important.

A. *W.Va.Code*, 42–3–1 [1992]:

The Elective–Share Provision

*W.Va.Code*, 42–3–1(a) [1992][2] states, in relevant part:

The surviving spouse of a decedent who dies domiciled in this state has a right of election, under the limitations and conditions stated in this part, to take an elective-share amount equal to the value of the elective-share percentage of the augmented estate, determined by the length of time the spouse and the decedent were married to each other[.]

*W.Va.Code*, 42–3–1 [1992] sets forth the amount a surviving spouse may elect to take from the augmented estate.[3]

■ The purpose behind an elective-share statute is to prevent disinheritance of the spouse. *See generally* John W. Fisher II & Scott A. Curnutte, *Reforming the Law of Intestate Succession and Elective Shares: New Solutions to Age–Old Problems*, 93 W.Va.L.Rev. 61, 98–115 (1990). As Professor Fisher has noted "[t]he protection of a decedent's wife from disinheritance began as early as the Code of Hammurabi, and can be traced through Roman, Germanic, Scandinavian and Saxon law." *Id.* at 101 (footnote omitted).

The purpose of the Revised Uniform Probate Code elective-share provision is to deal with the problem of spousal disinheritance in modern times. In fact, the elective-share provision of the Revised Uniform Probate Code specifically was written in order "to bring elective-share law into line with the contemporary view of marriage as an eco-

1. In 1969 the Uniform Probate Code was promulgated. Revised Article II of the Uniform Probate Code, 8 U.L.A. 76 at prefatory note (Supp.1994). In 1990 a Revised Article II of the Uniform Probate Code was approved by the National Conference of Commissioners on Uniform State Laws. *Id.* at 75 at historical notes. It is this Revised Article II to which we are referring when we discuss the Revised Uniform Probate Code (1990) in the text of this opinion. Portions of the Revised Article II were substantially revised in 1993.

Additionally, we note the National Conference of Commissioners on Uniform State Laws in 1992 approved The Uniform Act on Intestacy, Wills, and Donative Transfers. Uniform Act on Intestacy, Wills, and Donative Transfers, 8B U.L.A. 1 (1991). The Uniform Act on Intestacy, Wills, and Donative Transfers is the free-standing version of the Revised Article II of the Uniform Probate Code which the writers offered for those states that do not wish to adopt the entire Uniform Probate Code. *Id.* at 3 at prefatory note.
   The reader should be aware that information regarding the Revised Article II of the Uniform Probate Code may be found under The Revised Article II of the Uniform Probate Code, 8 U.L.A. 76 (Supp.1994) and under The Uniform Act on Intestacy, Wills, and Donative Transfers, 8B U.L.A. 1 (1993). Also, there are three versions (1990, 1991 and 1993) of the Revised Uniform Probate Code. For purposes of this opinion, there will be no need to make a distinction between the different versions.

2. *W.Va.Code*, 42–3–1 was amended in 1993; however, the amendment does not affect the discussion of this issue.

3. The augmented estate is outlined in *W.Va.Code*, 42–3–2(b) [1992] (*W.Va.Code*, 42–3–2 was amended in 1993; however, the amendment does not affect the outcome of this case) and consists of four elements: "the decedent's probate estate, the decedent's 'reclaimable' estate, property shifting to the surviving spouse due to the decedent's death, and the assets of the surviving spouse, including the spouse's reclaimable estate." John W. Fisher, II & Scott A. Curnutte, *Reforming the Law of Intestate Succession and Elective Shares: New Solutions to Age–Old Problems*, 93 W.Va.L.Rev. 61, 110 (1990).

nomic partnership." Revised Article II of the Uniform Probate Code, 8 U.L.A. 90 at general comment (Supp.1994).

The elective-share system, set forth in the Revised Uniform Probate Code, is based upon two rationales: (1) contribution—which recognizes that no matter what role a spouse plays in marriage, he or she has made some contribution towards the acquisition of property of the deceased spouse and (2) support—which recognizes that the surviving spouse will need support after the death of his or her spouse. Roberts, *supra* at 57–58. Therefore, the purpose behind the elective-share provision set forth in *W.Va.Code*, 42–3–1 [1992] is to prevent spousal disinheritance in order to ensure that the surviving spouse's contribution to the acquisition of property during the marriage is recognized and in order to ensure that the surviving spouse has continuing financial support after the death of his or her spouse. This purpose is obviously different than the purpose of the premarital will provision.

### B. *W.Va.Code*, 42–3–7 [1992]:

### The Premarital Will Provision

When there is a premarital will, *W.Va. Code*, 42–3–7 [1992] outlines what a surviving spouse is entitled to take from the decedent spouse's estate. *W.Va.Code*, 42–3–7(a) [1992], states, in relevant part:

If a testator's surviving spouse married the testator after the testator executed his or her will, the surviving spouse is entitled to receive, as an intestate share no less than the value of the share of the estate he or she would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised or passes to a descendant of such a child[.] [4] (footnote added). *W.Va.Code*, 42–3–7 [1992] explains that the portions of the estate which are devised to or which are passed to certain children or their descendants are excluded when the intestate share is calculated. Furthermore, *W.Va.Code*, 42–3–7 [1992] lists certain conditions which bar the surviving spouse from receiving an intestate share when there is a premarital will.

*W.Va.Code*, 42–3–7 [1992] takes into consideration the possibility that the decedent spouse may have forgotten about the pre-existing will when marrying the surviving spouse, and if the decedent spouse had remembered the will, he would have included the surviving spouse in the will. As the writers of the Revised Uniform Probate Code note in the comment to the premarital will section (§ 2–301 of the Revised Uniform Probate Code), "[t]his section reflects the view that the intestate share of the spouse in

4. *W.Va.Code*, 42–3–7 [1992] states in full:
    (a) If a testator's surviving spouse married the testator after the testator executed his or her will, the surviving spouse is entitled to receive, as an intestate share no less than the value of the share of the estate he or she would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised or passes to a descendant of such a child, unless:
    (1) It appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;
    (2) The will expresses the intention that it is to be effective notwithstanding any subsequent marriage; or
    (3) The testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision

is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.
    (b) In satisfying the share provided by this section, devises made by the will to the testator's surviving spouse, if any, are applied first, and other devises, other than a devise to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse or a devise or substitute gift to a descendant of such a child, abate.
Neither party alleges that any of the three conditions set forth in *W.Va.Code*, 42–3–7(a)(1) through (3) [1992] are present in the case before us; therefore, we will not be discussing that portion of *W.Va.Code*, 42–3–7 [1992].
    We point out that in the case before us, *W.Va. Code*, 42–3–7 [1992] would preclude the appellant from taking an intestate share since the premarital will left the decedent's entire estate to his children who were born before the decedent married the appellant.

that portion of the testator's estate not devised to certain of the testator's children ... is what the testator would want the spouse to have if he or she had thought about the relationship of his or her old will to the new situation." Revised Article II of the Uniform Probate Code § 2–301, 8 U.L.A. 120 (Supp. 1994). Importantly, the writers of the Revised Uniform Probate Code stress that the premarital will section applies automatically and need not be elected. *Id.*

C. The relationship between *W.Va.Code,* 42–3–1 [1992] and *W.Va.Code,* 42–3–7 [1992]

With this background in mind, the first issue is whether the circuit court erred in determining that when the testator executes a premarital will as provided by *W.Va.Code,* 42–3–7 [1992], the surviving spouse of that testator is precluded from taking an elective share of the decedent spouse's estate pursuant to *W.Va.Code,* 42–3–1 [1992].

■ It is clear from the above discussion that the purposes underlying *W.Va. Code,* 42–3–1 [1992] and *W.Va.Code,* 42–3–7 [1992] are different: *W.Va.Code,* 42–3–1 [1992] protects a surviving spouse from disinheritance and *W.Va.Code,* 42–3–7 [1992] gives a surviving spouse an intestate share in the amount the decedent spouse would have given the surviving spouse had he or she thought about the effect of the premarital will. Common sense dictates that the intestate share provided for under *W.Va.Code,* 42–3–7 [1992] does not preclude a surviving spouse from taking an elective share pursuant to *W.Va.Code,* 42–3–1 [1992]. To hold otherwise would allow a spouse to disinherit his or her spouse, thereby defeating the purpose behind the elective-share theory of the Revised Uniform Probate Code.[5]

Moreover, the West Virginia legislature added language to *W.Va.Code,* 42–3–1 after it was enacted in 1992 which clarifies the fact that the intestate share is not preclusive of the elective share: "The surviving spouse of a decedent who dies domiciled in this state has a right of election, *against either the will or the intestate share,* under the limitations and conditions stated in this part, to take an elective-share amount[.]" *W.Va.Code,* 42–3–1(a) [1993], in relevant part (emphasis added).

■ Accordingly, we hold that even though a testator executed a premarital will, as provided by *W.Va.Code,* 42–3–7 [1992], a surviving spouse of that testator is not precluded from taking an elective share of the decedent spouse's estate pursuant to *W.Va. Code,* 42–3–1 [1992].[6]

---

**5.** Additionally, it is evident in the comment to the premarital will section (§ 2–301) that the writers of the Revised Uniform Probate Code contemplated a surviving spouse being allowed to take an elective share, even if there is a premarital will:

> If the surviving spouse exercises his or her right to take an elective share, amounts provided under this section count toward making up the elective-share amount provided by virtue of the language in subsection (a) stating that the amount provided by this section is treated as 'an intestate share.' Under Section 2–209(a)(1), amounts passing to the surviving spouse by intestate succession count first toward making up the spouse's elective-share amount.

Revised Article II of the Uniform Probate Code § 2–301, 8 U.L.A. 120 at comment (Supp.1994). Although not controlling, the above comment is useful in understanding how the writers of the Revised Uniform Probate Code envisioned § 2–301 being applied. Clearly, the comment indicates that if the surviving spouse would take an intestate share pursuant to the premarital will statute, the surviving spouse still has the option of taking an elective share. The comment explains that the intestate share received pursuant to the premarital will section must count toward making up the surviving spouse's elective-share amount. The comment recognizes that the premarital will section should not be used to disinherit the surviving spouse.

**6.** The appellant raises two additional issues. The first issue is whether *W.Va.Code,* 42–3–2 [1992], which concerns the augmented estate, is applicable to the case before us.

The second issue is whether the supplemental elective-share amount provided for in *W.Va.Code,* 42–3–1(b) [1992] is $25,000 or $50,000. Professor Fisher concluded that the legislature mistakenly inserted the $50,000 figure in the 1992 version; however, the legislature " 'clean[ed] up' " this " 'mistake' " in a 1993 amendment to the statute by stating that the supplemental elective-share amount is $25,000. John W. Fisher, II, *Statutory Reform Revisited: Toward a Comprehensive Understanding of the New Law of Intestate Succession and Elective Share,* 96 W.Va. L.Rev. 85, 102 (1993).

However, the circuit court did not consider these issues. Therefore, we decline to address

## III.

 The final issue is whether a declaratory judgment action was proper in the case before us. *W.Va.Code,* 55–13–1 [1941], which is found in the Uniform Declaratory Judgments Act set forth in *W.Va.Code,* 55–13–1, *et seq.,* states:

> Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Clearly, the circuit court had the right to determine whether or not the appellant had the legal right to take an elective share.[7]

 Additionally, *W.Va.Code,* 55–13–4 [1941] specifically gives courts the power to hear a declaratory judgment action concerning estates:

> Any person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic or insolvent, may have a declaration of rights or legal relations in respect thereto:
>
> . . . .
>
> (c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

Moreover, this Court held in syllabus point 1 of *Arthur v. County Court of Cabell County,* 153 W.Va. 60, 167 S.E.2d 558 (1969) that "[a] declaratory judgment action is a proper procedure for an adjudication of the legal rights and duties of parties to an actual, existing controversy which involves the construction or application of a statute or of statutes." Therefore, the circuit court, in the case before us, properly entered a declaratory judgment. Accordingly, based on our discussion above, we reverse the order of the Circuit Court of Grant County.

Reversed.

BROTHERTON, C.J. did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

these issues on appeal. *See* syl. pt. 1, *Shackleford v. Catlett,* 161 W.Va. 568, 244 S.E.2d 327 (1978) (" 'In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken.' Syllabus Point 1, *Mowery v. Hitt,* 155 W.Va. 103, 181 S.E.2d 334 (1971)").

Additionally, we note that Professor Patricia J. Robert's article, *The 1990 Uniform Probate Code's*

*Elective–Share Provisions—West Virginia's Enactment Paves the Way,* 95 W.Va.L.Rev. 55 (1992), is helpful in explaining how a surviving spouse's elective-share is determined under the Revised Uniform Probate Code.

7. We note that pursuant to *W.Va.R.Civ.P.* 57, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."