703 N.W.2d 191 (2005)
In re ESTATE OF Ida SPRENKLE-HILL, Deceased.
George H. Hill, Petitioner-Appellant,
v.
Leslie R. Flint, Respondent-Appellee, and
David H. Tripp, Personal Representative of the Estate of Ida Sprenkle-Hill, Deceased, Respondent.
Docket No. 248783.
Court of Appeals of Michigan.
Submitted October 5, 2004, at Lansing.
Decided February 22, 2005, at 9:00 a.m.
Released for Publication April 15, 2005.
William M. Doherty, Hastings, for the petitioner.
Before: WHITBECK, C.J., and JANSEN and BANDSTRA, JJ.
PER CURIAM.
Petitioner George H. Hill appeals as of right from the probate court's order denying *192 his petition to elect against the decedent's will and claim a spousal share under M.C.L. § 700.2202(2). We reverse. We decide this case without oral argument pursuant to MCR 7.214(E).

I. Basic Facts And Procedural History
The decedent, Ida Sprenkle-Hill, had executed a will and trust in 1999, providing that on her death her entire estate would pour into the trust, which in turn would disburse specific amounts totaling $9,000 to two individuals and the remainder to her two sons. Sprenkle-Hill died in 2001. She had married Hill six months earlier, but never changed her will. Hill filed a spouse's election under M.C.L. § 700.2202(2). The probate court concluded that the general spousal election under M.C.L. § 700.2202(2) was not available to Hill because he was entitled to receive a share of the estate pursuant to M.C.L. § 700.2301, which applies to a spouse who married the testator after the testator's will was executed.

II. M.C.L. § 700.2202 and M.C.L. § 700.2301

A. Standard Of Review
Statutory construction is a question of law that requires review de novo.[1]

B. The Statutory Language
This case involves the interaction between two provisions of the Estates and Protected Individuals Code (EPIC)[2]: M.C.L. § 700.2202, which is editorially captioned "election of surviving spouse," and M.C.L. § 700.2301, which is editorially captioned "entitlement of spouse; premarital will." M.C.L. § 700.2202 provides, in relevant part:
(2) The surviving spouse of a decedent who was domiciled in this state and who dies testate may file with the court an election in writing that the spouse elects 1 of the following:
(a) That the spouse will abide by the terms of the will.
(b) That the spouse will take ½ of the sum or share that would have passed to the spouse had the testator died intestate, reduced by ½ of the value of all property derived by the spouse from the decedent by any means other than testate or intestate succession upon the decedent's death.
M.C.L. § 700.2301 provides, in relevant part:
(1) ... [I]f a testator's surviving spouse marries the testator after the testator executes his or her will, the surviving spouse is entitled to receive, as an intestate share, not less than the value of the share of the estate the surviving spouse would have received if the testator had died intestate as to that portion of the testator's estate, if any, that is not any of the following:
(a) Property devised to a child of the testator who was born before the testator married the surviving spouse and who is not the surviving spouse's child.
(b) Property devised to a descendant of a child described in subdivision (a).
(c) Property that passes under section 2603 or 2604[3] to a child described in subdivision (a) or to a descendant of such a child.
In other words, under § 2202, a surviving spouse may elect either to abide by the will or to receive a share of the decedent's *193 estate, which is referred to as the spouse's "elective share."[4] Under § 2301, a "pretermitted spouse"  that is, a surviving spouse who married the testator after the will was executed  is entitled to receive an intestate share of a specified portion of the estate.[5]

C. Interpreting The Language
Hill did not claim a share of the estate as a pretermitted spouse under § 2301, but chose instead to take his elective share under § 2202. The question this case presents is whether Hill was entitled to take his elective share as a surviving spouse or whether, as a pretermitted spouse, he was limited to the remedy afforded under § 2301. EPIC did not become effective until April 1, 2000, and this Court has not yet addressed the interaction between these provisions. We are thus faced with a question of statutory interpretation that we resolve using the following well-established principles.
The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature.[6] The first step in determining legislative intent is to review the language of the statute.[7] If the statute is unambiguous, the Legislature is presumed to have intended the meaning expressed, and judicial construction is neither required nor permissible.[8] However, "[w]hen reasonable minds may differ with regard to the meaning of a statute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute."[9]
A review of the language of the elective-share provision reveals that, by its terms, it applies to "[t]he surviving spouse of a decedent who was domiciled in this state and who dies testate...." This language is unambiguous, and there is no question that Hill satisfies these criteria. There is no reference anywhere in § 2202 to § 2301, nor does the language of § 2202 indicate that it does not apply to a surviving spouse who is not mentioned in the decedent's will.
The language of the pretermitted-spouse provision indicates that it applies to a "surviving spouse" who "marries the testator after the testator executes his or her will...." This language is also unambiguous, and Hill likewise satisfies these terms. Although § 2301 contains several exceptions  for example, where there is evidence that the testator made the will in contemplation of the marriage to the surviving spouse[10]  nothing in § 2301 indicates that a person who meets the qualifications for receiving an intestate share under § 2301 is barred from taking an elective share under § 2202.
Given the absence of ambiguity in the statutory language of §§ 2202 and 2301 and the lack of any statutory language to the contrary elsewhere in EPIC, we conclude that a surviving spouse who married the testator after the will was executed is not barred from claiming an elective share *194 under the terms of § 2202. This construction is consistent with the reporter's comment to § 2301, which indicates that a pretermitted spouse is eligible to choose an elective share of the estate under § 2202.[11] It is also consistent with the operation of the analogous provisions of the Uniform Probate Code,[12] on which EPIC is modeled.[13] Further, when this Court construed the analogous provisions of Michigan's previous Revised Probate Code, it held that a spouse could take an elective share without waiving the remedy provided for pretermitted spouses,[14] which implies that the two provisions were not considered mutually exclusive.
This interpretation also furthers the policy considerations underlying each provision. An examination of the reasoning employed by the West Virginia Supreme Court of Appeals in Mongold v. Mayle[15] in addressing the interaction between that state's pretermitted-spouse provision[16] *195 and its elective-share provision[17] is instructive. In Mongold, a surviving spouse appealed the circuit court's ruling that she was not entitled to claim her elective share because the statutory provision governing pretermitted spouses, which the appellate court referred to as the "premarital will provision," was exclusively controlling.[18] The appellate court began its analysis by observing that the purpose of an elective-share statute "is to prevent disinheritance of the spouse," and that this form of spousal protection has existed since the Code of Hammurabi.[19] The appellate court found that modern elective-share statutes reflect "`the contemporary view of marriage as an economic partnership,'"[20] and are based on the rationales that all surviving spouses have contributed in some way toward the deceased's ability to acquire property, and that the surviving spouse will need to be supported.[21] The appellate court concluded that the purpose behind West Virginia's elective-share provision was "to prevent spousal disinheritance in order to ensure that the surviving spouse's contribution to the acquisition of property during the marriage is recognized and in order to ensure that the surviving spouse has continuing financial support after the death of his or her spouse."[22]
The appellate court then observed that this purpose was "obviously different than the purpose of the premarital will provision," which considers "the possibility that the decedent spouse may have forgotten about the pre-existing will when marrying the surviving spouse, and if the decedent spouse had remembered the will, he would have included the surviving spouse in the will."[23] The appellate court concluded that "[c]ommon sense dictates" that the premarital will provision "does not preclude a surviving spouse from taking an elective share" because "[t]o hold otherwise, would allow a spouse to disinherit his or her spouse, thereby defeating the purpose *196 behind the elective-share theory of the Revised Uniform Probate Code."[24]
We find this reasoning persuasive, and we adopt it here. Because §§ 2202 and 2301 are not ambiguous and do not conflict, we see no reason to interpret these provisions in a manner that would undermine the Legislature's intent to insulate all spouses from disinheritance while also allowing a decedent's likely testamentary intent to be honored to the extent possible.[25] Accordingly, we conclude that a surviving spouse who satisfies the conditions of § 2301 may nonetheless take an elective share under § 2202 if that provision yields a larger amount. The amount to which the surviving spouse was entitled under § 2301 will then be considered part of the elective share.[26] Conversely, if the share available to a surviving spouse under § 2301 is greater than the elective share under § 2202, the surviving spouse will receive the full amount to which he or she is entitled under § 2301 by electing  either affirmatively[27] or by default[28]  to abide by the terms of the will.
Reversed and remanded for further proceedings.
NOTES
[1] Haworth, Inc. v. Wickes Mfg. Co., 210 Mich.App. 222, 227, 532 N.W.2d 903 (1995).
[2] M.C.L. § 700.1101 et seq.
[3] Sections 2603 and 2604, M.C.L. §§ 700.2603 and 700.2604, address substitute gifts and failures of testamentary provisions, respectively.
[4] M.C.L. § 700.2202(2).
[5] M.C.L. § 700.2301(1).
[6] Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc., 456 Mich. 511, 515, 573 N.W.2d 611 (1998).
[7] In re MCI Telecom. Complaint, 460 Mich. 396, 411, 596 N.W.2d 164 (1999).
[8] Id.
[9] Chop v. Zielinski, 244 Mich.App. 677, 680, 624 N.W.2d 539 (2001).
[10] See M.C.L. § 700.2301(2)(a).
[11] The reporter's comment to § 2301 states, in part:

If this § 2301 intestate share is less than the spouse's elective share under § 2201, it is part of (counts against) the elective share. If this § 2301 share is greater than the elective share, the spouse will receive this intestate share even if the spouse elects to abide by the terms of the will. [1 Michigan Probate Sourcebook (3d ed.), p. 1-74.]
Note that the elective share under § 2201 to which the comment refers is the same as that under § 2202. Section 2201, M.C.L. § 700.2201, provides: "Subject to sections 2203 to 2205, upon an individual's death, the individual's surviving spouse has the right described by section 2202." Sections 2203 to 2205, M.C.L. § 700.2203 to 700.2205, address situations that are not present in this case.
[12] The analogous provisions of revised Article II of the Uniform Probate Code are §§ 2-202 (elective share provision) and 2-301 (pretermitted spouse provision). The comment to the 1990 revised version of § 2-301 reads, in part:

Under this section, a surviving spouse who married the testator after the testator executed his or her will may be entitled to a certain minimum amount of the testator's estate. The surviving spouse's entitlement under this section, if any, is granted automatically; it need not be elected. If the surviving spouse exercises his or her right to take an elective share, amounts provided under this section count toward making up the elective-share amount by virtue of the language in subsection (a) stating that the amount provided by this section is treated as "an intestate share." [8 ULA 133-134.]
[13] See 1 Michigan Probate Sourcebook (3d ed.), Reporter's Preface, p. xiii ("... EPIC follows the [Uniform Probate Code] and is based on the same philosophical and substantive provisions....").
[14] See In re Cole Estate, 120 Mich.App. 539, 328 N.W.2d 76 (1982) (construing former M.C.L. § 700.282 [elective share] and former M.C.L. § 700.126 [pretermitted spouse]). See also In re Herbach Estate, 230 Mich.App. 276, 282 n. 3, 583 N.W.2d 541 (1998) (noting that a surviving spouse's "decision to take her elective share of the estate did not operate as a waiver of her right to pursue the larger share potentially available to her as a pretermitted spouse").
[15] Mongold v. Mayle, 192 W.Va. 353, 452 S.E.2d 444 (1994).
[16] W. Va. Code 42-3-7. This provision, which is nearly identical to M.C.L. § 700.2301, states:

(a) If a testator's surviving spouse married the testator after the testator executed his or her will, the surviving spouse is entitled to receive, as an intestate share no less than the value of the share of the estate he or she would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised or passes to a descendant of such a child, unless:
(1) It appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;
(2) The will expresses the intention that it is to be effective notwithstanding any subsequent marriage; or
(3) The testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.
(b) In satisfying the share provided by this section, devises made by the will to the testator's surviving spouse, if any, are applied first, and other devises, other than a devise to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse or a devise or substitute gift to a descendant of such a child, abate.
[17] West Virginia's elective-share provision is codified at W. Va. Code 42-3-1. When Mongold was decided, the provision stated, in relevant part:

(a) The surviving spouse of a decedent who dies domiciled in this state has a right of election, under the limitations and conditions stated in this part, to take an elective-share amount equal to the value of the elective-share percentage of the augmented estate, determined by the length of time the spouse and the decedent were married to each other, in accordance with the following schedule: [schedule omitted].
[18] Mongold, supra at 354, 356, 452 S.E.2d 444.
[19] Id. at 355, 452 S.E.2d 444, citing Fisher & Curnutte, Reforming the Law of Intestate Succession and Elective Shares: New Solutions to Age-Old Problems, 93 W. Va. L. Rev. 61, 98-115 (1990).
[20] Mongold, supra at 355-356, 452 S.E.2d 444, quoting the general comment to revised Article II of the Uniform Probate Code, see 8 ULA 93.
[21] Mongold, supra at 356, 452 S.E.2d 444, citing Roberts, The 1990 Uniform Probate Code's Elective-Share Provisions  West Virginia's Enactment Paves the Way, 95 W. Va. L. Rev. 55, 57-58 (1992).
[22] Mongold, supra at 356, 452 S.E.2d 444.
[23] Id.
[24] Id. at 357, 452 S.E.2d 444.
[25] See Frankenmuth Mut. Ins., supra at 515, 573 N.W.2d 611; In re MCI Telecom. Complaint, supra at 411, 596 N.W.2d 164. See also Waggoner, The Multiple-Marriage Society and Spousal Rights Under the Revised Uniform Probate Code, 76 Iowa L. Rev. 223, 254 (1991) (noting that one purpose of the omitted-spouse provision, which "stands in addition to the apparatus of the elective share," is "to provide a share for the surviving spouse more related to the amount the decedent probably would have wanted to give, had the decedent gotten around to revising the premarital will"). Lawrence W. Waggoner was the reporter for the drafting committee for the revised Article II of the Uniform Probate Code.
[26] See reporter's comment to § 2301, 1 Michigan Probate Sourcebook (3d ed.), p. 1-74.
[27] See M.C.L. § 700.2202(2)(a).
[28] See M.C.L. § 700.2203.