# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Lester Yost, Lewis Yost, and Rosalie Yost,**
**Defendants Below, Petitioners**

**vs) No. 19-0605** (Morgan 18-C-6)

**Mary Ann Yost,**
**Plaintiff Below, Respondent**

**FILED**

**September 4, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Siblings Lester Yost, Lewis Yost, and Rosalie Yost, petitioners herein and defendants below, by counsel Richard G. Gay, appeal the June 6, 2019, order of the Circuit Court of Morgan County that reversed the Morgan County Commission's February 1, 2018, admission to probate of the will of petitioners' brother, decedent Steven Switzer Yost. The circuit court ordered that the estate shall proceed as if Steven Switzer Yost died intestate and that his wife, Respondent Mary Ann Yost, shall inherit 100% of her husband's estate, however constituted. Respondent, by counsel Eric S. Black, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 22, 2001, Steven Yost ("decedent") executed his last will and testament (the "will"). The "Disposition and Residuary Clause" in the will provides:

> I give, devise, and bequeath the rest, residue and remainder of my estate real and personal to MARY ANN WATKINS, if she survives me.
>
> If MARY ANN WATKINS fails to survive me, I give, devise, and bequeath the rest, residue, and remainder of my estate real and personal property to JOSEPH L. YOST, LESTER G. YOST, LEWIS M. YOST, and ROSALIE L. YOST, in equal shares, share and share alike.

1

Although decedent had been previously married to his first wife, Margaret Yost, they were no longer married when he executed his 2001 will. Subsequently, in 2006, decedent married his second wife, the "Mary Ann Watkins" named in decedent's will; however, Mary Ann Watkins died in 2007. In 2012, decedent married his third wife, Respondent Mary Ann Daily Yost. Soon thereafter, he added respondent to his checking account as a joint account holder and made her the beneficiary of his IRA and his pension upon his death. Decedent died about five years later, on September 22, 2017. No children were ever born to petitioner and he never changed his 2001 will. Respondent received the benefits of decedent's checking account, IRA, and pension upon his death. Also, at the time of his death, decedent owned 13.5 acres of developed real estate valued at $155,000. Decedent and respondent lived in a house on that property during their marriage. The primary dispute in this case appears to regard decedent's real estate, which originally belonged to decedent and his siblings' (petitioners') parents.

In accordance with West Virginia Code § 41-5-10, the Morgan County Commission (the "Commission") approved the ex parte admission to probate of decedent's 2001 will. Respondent objected.

At a January 17, 2018, hearing, the Commission heard respondent's objections to the ex parte admission of decedent's will. Respondent claimed that under West Virginia Code § 42-3-7, which addresses premarital wills, she should inherit the intestate share of decedent's estate, i.e., 100% of the estate, because decedent died intestate and without issue. Respondent also argued that *Mongold v. Mayle*, 192 W. Va. 353, 452 S.E.2d 444 (1994), was applicable to this case. In *Mongold*, the Court said,

> It is clear . . . that the purposes underlying W.Va.Code, 42-3-1 [1992] and W.Va.Code, 42-3-7 [1992] are different: W.Va.Code, 42-3-1 [1992] protects a surviving spouse from disinheritance and W.Va.Code, 42-3-7 [1992] gives a surviving spouse an intestate share in the amount the decedent spouse would have given the surviving spouse had he or she thought about the effect of the premarital will. Common sense dictates that the intestate share provided for under W.Va.Code, 42-3-7 [1992] does not preclude a surviving spouse from taking an elective share pursuant to W.Va.Code, 42-3-1 [1992]. To hold otherwise would allow a spouse to disinherit his or her spouse, thereby defeating the purpose behind the elective-share theory of the Revised Uniform Probate Code.

*Id.* at 357, 452 S.E.2d at 448. Respondent argued that because decedent had no children, she was entitled to the intestate share without having to elect to receive that share.

Petitioners also appeared at the January 17, 2018, Commission hearing. They argued, among other things, that *Mongold* was distinguishable because it involved a divorce from a first marriage and, therefore, was inapplicable to the instant case.

On February 1, 2018, the Morgan County Commission entered its "ORDER APPROVING THE EX PARTE ADMISSION TO PROBATE OF THE LAST WILL AND TESTAMENT OF [DECEDENT] DATED AUGUST 22, 2001[.]" The Commission rejected respondent's argument

and found that "under the facts of this case, [decedent's] remarriage did not revoke the prior disposition of the former spouse."

On April 3, 2018, respondent initiated a civil action in the circuit court challenging the Commission's February of 2018, order. Thereafter, respondent filed a motion for summary judgment arguing that the Commission erred in approving the ex parte admission of decedent's will. Petitioners filed a cross-motion for summary judgment asserting that respondent was not entitled to an intestate share under West Virginia Code § 42-3-7. Following an evidentiary hearing, the circuit court granted summary judgment to respondent. The court found that, based on West Virginia Code § 42-3-7, decedent died intestate and, therefore, respondent was entitled to inherit her intestate share, i.e., one hundred percent of decedent's estate.

Petitioners now appeal and, in their first assignment of error, argue that the circuit court erred in granting summary judgment to respondent.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Further, "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we [also] apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charles A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

Petitioners argue that respondent is not entitled to an intestate share because, under West Virginia Code § 42-3-7(a)(3), decedent provided for respondent with transfers outside the will including his checking account, his IRA, and his pension benefits, and that his intent to make such a transfer can be "reasonably inferred from the amount of the transfer or other evidence." As noted above, West Virginia Code § 42-3-7(a)(3) provides as follows:

> (a) If a testator's surviving spouse married the testator after the testator executed his or her will, the surviving spouse is entitled to receive, as an intestate share no less than the value of the share of the estate he or she would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised or passes to a descendant of such a child, unless:
>
> . . . .
>
> (3) *The testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.*

(Emphasis added.) Petitioners assert that upon decedent's death, respondent received decedent's IRA worth $40,796.68, $8,541.07 from decedent's checking account, and $421.10 each month in surviving spouse benefits from decedent's pension. Thus, petitioners claim respondent was more than adequately provided for outside of decedent's will. Petitioners also aver that respondent wrongfully claims these funds were causa mortis gifts and, therefore, not testamentary in nature. Petitioners highlight that for such funds to be causa mortis gifts, certain elements must be satisfied:

3

In order to make an effective gift, whether it be Inter vivos or Causa mortis, the donor must consummate the transfer as a present gift to the donee, thereby giving such donee the present right to immediate possession of the gift and divesting the donor of possession and all dominion and control over the thing given. This is distinguishable from a gift to be made in the future which connotes a testamentary disposition. *Waugh v. Richardson*, 107 W.Va. 43, 147 S.E. 17; *Dickeschied v. Exchange Bank, et al.*, 28 W.Va. 340; 1 Bowe-Parker: Page on Wills, Gifts Causa Mortis, s 7.9, s 7.11.

The foregoing principle is succinctly stated in Harrison on Wills and Administration, Second Edition, Gifts Causa Mortis, s 83, as follows: '* * * It has been repeatedly decided that where a gift has no effect until after the death of the donor, the donor retaining the dominion and control over the property, it cannot be sustained as a valid gift either Inter vivos or Causa mortis but such a gift is testamentary and all the provisions of the testamentary law must be complied with to make it effective. Thus, the broad distinction between all forms of gifts and testamentary dispositions. A gift testamentary in character cannot have any effect until after death. A gift not testamentary must take effect at once.'

*Grace v. Klein*, 150 W. Va. 513, 518-19, 147 S.E.2d 288, 292 (1966). In light of *Klein*, petitioners argue that respondent cannot prove the benefits resulting from decedent's death are causa mortis gifts because decedent never divested himself of dominion and control over his IRA, bank account, and pension benefits during his life, nor did respondent take "immediate possession" of those funds.

We disagree and find that the circuit court did not err in reversing the County Commission and in finding that decedent's estate shall be administered as if decedent died intestate, and respondent shall inherit 100% of decedent's estate however constituted. The circuit court based is conclusion on the following findings: First, petitioners presented no evidence that decedent made his will in contemplation of marriage to his second wife, Mary Ann Watkins. Second, decedent's will "does not express the intention that it is to be effective notwithstanding any subsequent marriage." Third, decedent did not expressly provide for respondent by transfer outside the will in lieu of a testamentary provision. Accordingly, the court found that West Virginia Code § 42-3-7 (1992) applies as follows:

> The . . . thing that the [c]ourt has to consider then is whether or not there is any evidence that the testator intended to provide for [respondent] outside of the Will under West Virginia Code § 42-3-7(a)(3). The only evidence introduced before this [c]ourt in response to the issue was the testimony of [respondent, who] stated that the decedent . . . had informed [respondent] that he intended for her to have all the property [including his real property]. The [c]ourt never heard from any other witnesses that they had been promised the property from [decedent] and no writings have been provided to this [c]ourt that would signify to the [c]ourt the decedent's intent. Without there being any other evidence that the decedent actually intended his transfer of the IRA account to be in lieu of her testamentary share, then

4

[t]his [c]ourt does not find that there is any evidence to support that contention. Merely adding somebody as a paid on death to an account does not evidence, in this [c]ourt's opinion, that somebody contemplated basically anything pertaining to their [w]ill.

Shortly after his third marriage, decedent added respondent to his checking account and made her the surviving beneficiary of his IRA and his pension. Contrary to petitioners' claims, decedent's actions do not evidence that he wished to exclude respondent from his will, as petitioners claim. Instead, decedent's actions evidence his wish to provide for his wife in the event that he predeceased her.

Importantly, at the hearing in this matter, respondent testified as follows:

*Question*: When you got married [to decedent] did he have any conversation with you . . . about what you would inherit if he passed away?

*Respondent*: The properties, the real estate, the house, things like that.

*Question*: He did have a conversation with you about what you would inherit?

*Respondent*: Yes, because he was looking out the window and he told me, he said, that boundary is here and here and he said, you need to know because you are going to get it all.

*Question*: The boundary he was pointing at is the 13 acres we've set forth as the property he owned when he died?

*Respondent*: Yes.

*Question*: And he told you these boundaries and you get it when I pass away?

*Respondent*: Yes.

*Question*: Did he ever tell you that he provided some other method of providing for you when he died?

*Respondent*: No.

Petitioners presented no evidence rebutting respondent's testimony. Nor was there any evidence that decedent wanted his wife to leave the marital home upon his death so that his siblings could inherit his real estate. Accordingly, we find that the circuit court did not err in finding that the "unrebutted testimony was that [decedent] wanted his current wife . . . to have all his estate." West Virginia Code § 42-3-7 entitled respondent to receive 100% of decedent's estate because he executed his will prior to his marriage to respondent and he had no children.

Further, West Virginia Code § 42-1-3(a) provides that the intestate share of a surviving spouse is "[t]he entire estate if: (1) No descendant of the decedent survives the decedent[.]" Because petitioner had no children, respondent properly received decedent's entire estate. Accordingly, the circuit court correctly concluded that,

> the applicable law in this case is W. Va. Code § 42-3-7(a), and that statute provides, "If a testator's surviving spouse married the testator after the testator executed his or her will, the surviving spouse is entitled to receive, as an intestate share no less than the value of the share of the estate he or she would have received if the testator dies intestate as to that portion of the testator's estate.

> In this case, there were no other children born of the testator, and therefore, if he had died without a Will, [respondent] would, in fact, receive 100% of the estate and the [c]ourt does find that all of those facts exist to support that.

Accordingly, we find no error.

In petitioners' second "assignment of error," they claim that "[t]he circuit court *correctly applied the law* in finding that West Virginia Code § 41-1-6(B) does not apply to this case and that remarriage does not provide a basis to revoke a prior will." (Emphasis added.) Clearly, this statement alleges no error and, instead, endorses the circuit court's decision. Rule 10(c)(3) of the West Virginia Rules of Appellate Procedure requires that an appellate brief to this Court list "the assignment of error" presented for review. *See also* W. Va. Code § 58-5-6 ("Petitions for appeal shall be filed and processed in accordance with the rules of appellate procedure promulgated by the Supreme Court of Appeals."). Thus, petitioners' brief fails to comport with Rule 10(c)(3). Based upon petitioners' failure to comply with this Court's Rules of Appellate Procedure and West Virginia Code § 58-5-6, we do not further address their second "assignment of error." *See* Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure;  and Rule 10(j) of the West Virginia Rules of Appellate Procedure ("[t]he failure to file a brief in accordance with this rule may result in the Supreme Court refusing to consider the case . . . or imposing other sanctions as the Court may deem appropriate").

Accordingly, for the forgoing reasons, we affirm the Circuit Court of Morgan County's June 6, 2019, order.

Affirmed.

**ISSUED:** September **4, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6